# Illinois Official Reports

## Supreme Court

---

### *People v. Lesley*, 2018 IL 122100

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. MYRON T. LESLEY, Appellee. |
| Docket No. | 122100 |
| Filed | November 29, 2018 |
| Decision Under Review | Appeal from the Appellate Court for the Third District; heard in that court on appeal from the Circuit Court of La Salle County, the Hon. Cynthia Raccuglia, Judge, presiding. |
| Judgment | Appellate court judgment reversed. Cause remanded. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield (David L. Franklin, Solicitor General, and Michael M. Glick and Katherine M. Doersch, Assistant Attorneys General, of Chicago, of counsel), for the People.<br><br>James E. Chadd, State Appellate Defender, Patricia Mysza, Deputy Defender, and Tiffany Boye Green, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellee. |
| Justices | JUSTICE NEVILLE delivered the judgment of the court, with opinion.<br>Chief Justice Karmeier and Justices Thomas, Kilbride, Garman, Burke, and Theis concurred in the judgment and opinion. |

**OPINION**

¶ 1  Defendant, Myron T. Lesley, *pro se* filed in the circuit court of La Salle County a postconviction petition under section 122-4 of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-4 (West 2012)). The court advanced the petition and appointed counsel to represent defendant, and the State filed a motion to dismiss. Ultimately, defendant was required to proceed *pro se*, and the court granted the State's motion in part and denied the motion in part. Following a third-stage evidentiary hearing, at which defendant also appeared *pro se*, the court denied defendant's petition.

¶ 2  On appeal, defendant argued that the circuit court erred in forcing him to represent himself. A divided appellate court agreed and reversed and remanded for appointment of counsel and new second-stage postconviction proceedings. 2017 IL App (3d) 140793, ¶ 28.

¶ 3  This court allowed the State's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Mar. 15, 2016). We now reverse the judgment of the appellate court and remand to that court for further proceedings.

¶ 4             I. BACKGROUND

¶ 5  On February 28, 2012, defendant was indicted on one count of unlawful possession of a controlled substance with intent to deliver and three counts of unlawful delivery of a controlled substance. Defendant was released on bond. At a May 2012 hearing, Assistant Public Defender James Reilly informed the court that defendant intended to seek private counsel. At the final pretrial hearing, Reilly sought a continuance because defendant had not yet secured private counsel. In August 2012, Reilly was permitted to withdraw, and private counsel, Douglas Olivero, entered his appearance. Olivero appeared at several status hearings. Defendant failed to appear at a December 2012 hearing, and Olivero moved to withdraw, citing defendant's refusal to cooperate. Subsequently, defendant again failed to appear, a warrant issued, and defendant was taken into custody on the warrant. The circuit court granted Olivero's motion to withdraw and appointed Assistant Public Defender Michael Olewinski to appear on defendant's behalf. Olewinski appeared at a January 2013 status hearing and again in April 2013, when he informed the court that defendant "still has to come in and speak with our office." The court then urged defendant to "please help them prepare for you so make sure you go in and see them."

¶ 6  In April 2013, while free on bond, defendant was arrested and charged with two additional counts of unlawful delivery of a controlled substance. Thereafter, defendant was arraigned on the new counts.

¶ 7  On June 13, 2013, defendant pled guilty to the offenses of unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/401(c)(2) (West 2012)) and unlawful delivery of a controlled substance (*id.*) in exchange for consecutive sentences of five years' imprisonment and six years' imprisonment, respectively. The State also agreed to dismiss four additional charges.

¶ 8  On September 30, 2013, defendant *pro se* filed a postconviction petition alleging that he received ineffective assistance of plea counsel, asserting that counsel failed to adequately investigate his case and that no justification was given for his consecutive sentences.

¶ 9 The State responded by filing a motion to dismiss the petition, and at defendant's request, the circuit court appointed the public defender to represent him.

¶ 10 A hearing on defendant's petition was conducted by the same judge who had taken defendant's plea and imposed sentence. Defendant appeared with Timothy Cappellini, a La Salle County assistant public defender, for a "first appearance" hearing on the postconviction petition. Defendant requested a long continuance explaining that he and Cappellini had a disagreement regarding the acquisition of defendant's sentencing hearing transcripts. Cappellini responded: "I said if he doesn't want me to represent him, he can go *pro se*." The court informed defendant that Cappellini could easily get the sentencing transcripts and that was what defendant needed for his petition. Cappellini then explained that

"if the defendant is not going to listen to anything I tell him when I try to explain the law and he's going to tell me I'm wrong[,] I said, you can go *pro se*. You can get the transcripts and you can do that or else, I represent you as an attorney and I have to follow the law. That's all there is to it."

The court addressed defendant directly, stating

"if you're not going to listen to him, then you have to tell me you want to go *pro se*. If you want to call [private counsel], you can do what you want but the point is whoever represents you is going to tell you that. That you have to listen to them."

¶ 11 The case was continued to December 19, 2013, when Douglas Kramarsic, another assistant public defender, appeared on behalf of defendant and informed the court that he had spoken with defendant about some specifics regarding the petition and provided defendant with case law and the sentencing transcripts.

¶ 12 On January 9, 2014, Cappellini appeared along with defendant to discuss the State's motion to dismiss. Cappellini stated that he had supplied defendant with a copy of the sentencing transcripts. During the hearing, when defendant stated that he needed more information, Cappellini explained that this was postconviction, not a retrial. The court informed defendant that "I have to see whether you have pleaded enough with evidence as required by law—then if you are given the right to have a hearing you may need other things, but we need to take it one step at a time."

¶ 13 At a February 20, 2014, status hearing, Kramarsic appeared on behalf of defendant, who was in shackles because he had argued with Kramarsic. Kramarsic informed the court that he had previously met with defendant to attempt to explain changes he wanted to make to the postconviction petition. Kramarsic stated that defendant became "very belligerent" and told Kramarsic "numerous times to go f*** [him]self." Defendant told Kramarsic that he was "fired" and defendant wanted to hire his own attorney. Defendant then grabbed the papers out of Kramarsic's hands "in a physical and aggressive manner." Kramarsic retreated from the room as defendant continued to yell obscenities at him.

¶ 14 Kramarsic stated to the circuit court that "it's clear that [defendant] does not wish to continue with me as his attorney, and I'll leave it to the Court's discretion as to what should take place next." The court asked defendant to respond, and defendant stated that Kramarsic "tried to treat me like I'm stupid or something—and then I'm trying to show him something and he's ignoring it and I'm yelling at him, I don't think he's trying to help me, he's trying to hurt me."

¶ 15    The circuit court explained to defendant that he had been appointed several public defenders, that there was no one left to appoint, and that defendant did not have a choice as to which attorney he was assigned from the public defender's office. Defendant stated that he wanted to hire his own attorney, and the court granted him a 60-day continuance. The court then addressed defendant's request, stating "I can see there were developing problems even before today. I can't give you another Public Defender but I can certainly let you hire somebody." The following colloquy ensued:

> "MR. KRAMARSIC: Your Honor, I guess at this point it may leave me in limbo. I guess if you're still leaving me as the attorney of record, there are issues that I would want to correct with this but [defendant] certainly does not wish to hear anything that I have to say.

> * * *

> THE COURT: Is there anything that you want to put on the record today?

> MR. KRAMARSIC: I mean, I would just like to say that I have reviewed the records, I have reviewed everything involved in this case. I haven't filed my certification regarding that, which I was going to file with my amended petition, but I can't even get to the point of being able to do that."

¶ 16    The court informed Kramarsic that he would not be required to do anything until they learned whether defendant would be able to retain private counsel. The court then said: "And so I am reserving my ruling on you filing anything, nor are you under any obligation to do that until I see what [defendant] can find in 60 days, so let's do that for you."

¶ 17    On April 24, 2014, at a status hearing, Kramarsic advised the court that he attempted to discuss with defendant whether defendant had been able to hire private counsel and "it [was] one hundred percent absolutely clear from [the] conversations that [defendant] want[ed] nothing to do with [Kramarsic] in this case." Defendant stated that he was trying to find an attorney but had not hired one. The court scheduled a hearing on the State's motion to dismiss the petition for June 12, 2014. The court explained to Kramarsic, "I'm aware he won't talk to you. And so you won't be representing him at any hearing at this point." The court deferred any action, and the following colloquy occurred:

> "THE COURT: All right. So we'll do that. And if [defendant] doesn't have a lawyer [at the hearing on the motion to dismiss], I'll have to address him as to his options.

> But you put on the record he doesn't want to talk to you. That's fine.

> I'm not dismissing you completely, I'm leaving options open. But I won't expect you to be prepared for a hearing is what I am saying.

> MR. KRAMARSIC: Okay.

> THE COURT: You're still in the case."

¶ 18    At the hearing on June 12, 2014, defendant appeared without private counsel. The following discussion took place:

> "THE COURT: Now, [defendant], it's my understanding that you still want to proceed *pro se*, to represent yourself?

> DEFENDANT: I'm going to have to, Your Honor, yes, ma'am.

> THE COURT: Why are you going to have to?

- 4 -

DEFENDANT: I asked [Kramarsic] three times back there are you going to help me and he gave me no answer.

THE COURT: Now, when you say, is he going to help you, what do you mean by that? I need to investigate this issue.

DEFENDANT: That's what I'm saying, is he going to help me try to get through this post-conviction?

THE COURT: Well, he has so far, has he not? Mr. Kramarsic?

DEFENDANT: He hasn't filed no motion or nothing.

THE COURT: You need to address this issue because when there's a complaint, you know, we need to have an answer here.

\* \* \*

It's not just—[defendant's] complaining not just that he wants to represent himself but he says that you said you're not going to help him so why don't you respond.

MR. KRAMARSIC: Your Honor, I have. This is the third time I've attempted to talk to [defendant] about this case. First time that I met with him he did not agree with the—with my ideas with the case and the way I wanted to proceed and I told him I didn't believe the issues here—that we had strong issues, and he wanted to proceed with what he thought was the right way to do it and not even listen to the way I wanted to proceed with the case. That was the first time.

The second time I met with him again I tried again to explain what I felt about the case. Again, he disagreed with me. That was the time that he lunged at me and swore at me and told me to leave, and certainly I could tell at that point that obviously he does not want me to help him at all. He just doesn't agree with my theory of the case and clearly does not want me involved with it and I feel like I'm stuck here because I don't know what else to do. [Defendant has] told me numerous times he does not want me to do anything.

THE COURT: All right, well, I find knowing [defendant], and considering the issues involved here, that it appears you do not want to listen to Mr. Kramarsic.

Now the question—I will allow—you can't choose what Public Defender you're going to have so I'll allow the Public Defender to withdraw.

Now, the question becomes, [defendant], the only right to a lawyer that you have—I feel you are capable of representing yourself if that is your desire, is whether you want to hire private counsel or you want to represent yourself *pro se*.

That's the first question I have of you. What is your answer?

DEFENDANT: I was trying to hire private counsel, Your Honor, you know what I'm saying, but finally no funding. \*\*\*

THE COURT: \*\*\* do you want to represent yourself?

DEFENDANT: No, I can't represent myself.

THE COURT: Well, you're going to have to.

DEFENDANT: All right, let's go.

THE COURT: When you say you can't—are you telling me that you're not going to be able to hire private counsel?

DEFENDANT: I'm waiting on my parents."

¶ 19    The court asked defendant if he was ready to proceed on the State's motion to dismiss, and defendant replied, "I guess so." The court clarified, asking defendant to answer "yes" or "no," and defendant stated "I got no attorney. I guess not." The court permitted defendant to file additional pleadings, which contained an argument that the State erred in charging him with an offense he committed while out on bond under the original criminal case number. The court granted defendant a 35-day final continuance. The court informed defendant that at the next hearing he should be prepared "either on [his] own or with a lawyer" to proceed on the State's motion to dismiss.

¶ 20    On July 17, 2014, a hearing was held on the State's motion to dismiss. Defendant appeared *pro se*. The circuit court granted the motion in part but ordered that an evidentiary hearing be held on the issue of ineffective assistance of plea counsel. At the conclusion of the proceedings, the judge addressed defendant, asking, "You still want to represent yourself, obviously?" Defendant responded, "Pretty much." The court inquired, "Is that true?" and defendant answered "Yes, ma'am. But I need to go back to my prison and do the research." Defendant asked for a far-off court date, and the court granted his request for "at least 60 days." The court also informed defendant that at the evidentiary hearing he could question plea counsel, testify himself, and bring "any law" that he had.

¶ 21    On October 24, 2014, an evidentiary hearing was held, and defendant appeared *pro se*. Defendant's plea counsel was the only witness. Following argument by the parties, the court denied defendant's postconviction petition.

¶ 22    On appeal, defendant argued that the circuit court erred in forcing him to represent himself and that the circuit court applied an incorrect standard of proof at the evidentiary hearing. A majority of the appellate court agreed that the court erred in requiring defendant to proceed *pro se*. 2017 IL App (3d) 140793, ¶ 23.

¶ 23    The appellate court majority, citing *People v. Ames*, 2012 IL App (4th) 110513, concluded that the circuit court erred by permitting postconviction counsel to withdraw before warning the defendant that he stood to lose his right to appointed counsel if his behavior continued. In the absence of such a warning, defendant's repeated failure to cooperate with his appointed counsel could not be construed as a waiver. 2017 IL App (3d) 140793, ¶ 21.

¶ 24    The majority also declined to find that defendant forfeited his right to counsel, stating that defendant's "misconduct was [not] so severe that no warning was necessary or foreseeable" and that, "[w]hile the trial court has discretion to determine whether the severity of a defendant's misconduct requires forfeiture, under these facts, a warning would have been the appropriate remedy." *Id.* ¶ 25.

¶ 25    The appellate majority rejected the remaining issue raised by defendant and found that, because it was remanding on other grounds, it need not determine whether the trial court applied an incorrect standard of proof at the evidentiary hearing. *Id.* ¶ 1. The appellate court reversed the circuit court's denial of defendant's postconviction petition and remanded for further proceedings. *Id.* ¶ 28.

¶ 26    The dissenting justice stated that "defendant was well aware that his refusal to work with the public defender would leave him with two choices: hire private counsel or proceed *pro se*." *Id.* ¶ 32 (Schmidt, J., dissenting). The dissenting justice also found that

- 6 -

"as early as February 20, 2014, the trial court was putting defendant on notice that if he could not get along with the public defender, then he would either have to hire private counsel or represent himself. If it was not clear then, it certainly should have been clear on April 24, 2014. It is hard to understand how anyone in the courtroom that day could not understand that the options were to get along and cooperate with the public defender, hire your own counsel, or proceed *pro se*." *Id.* ¶ 35.

¶ 27 The State appeals to this court. Additional pertinent facts will be discussed in the context of the issues raised on appeal.

¶ 28                                        II. ANALYSIS

¶ 29 Before this court, the State contends that defendant waived his right to postconviction counsel due to his conduct. The State also argues, in the alternative, that defendant forfeited his right to counsel due to his egregious misconduct. Defendant responds that the court failed to warn him that his continued conduct would result in waiver of his right to counsel. Defendant also contends that his alleged misconduct did not rise to the level that would cause forfeiture.

¶ 30 We review the legal question of whether defendant was deprived of his right to counsel *de novo*. *People v. Hale*, 2013 IL 113140, ¶¶ 15-16.

¶ 31 Initially, we summarize the familiar procedural framework of the Act (725 ILCS 5/122-1 *et seq.* (West 2012)). The Act provides a method for an individual, subject to a criminal sentence, to challenge a conviction by alleging it was the result of a substantial denial of federal or state constitutional rights or both. *People v. Cotto*, 2016 IL 119006, ¶ 26. The Act includes a three-stage process for adjudicating petitions. *Id.*; *People v. Hommerson*, 2014 IL 115638, ¶ 7. At the first stage, the circuit court determines whether the petition is "frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2012). If the petition is not dismissed at first-stage proceedings, it advances to the second stage. *Hommerson*, 2014 IL 115638, ¶ 7.

¶ 32 At the second stage, the court may appoint counsel to represent an indigent defendant, and counsel may amend the petition if necessary. 725 ILCS 5/122-4 (West 2012). The State may then file a motion to dismiss the petition. *Id.* § 122-5. If the State does not file a motion to dismiss or if the court denies the State's motion, the petition will proceed to the third stage, and the court will conduct an evidentiary hearing on the merits of the petition. *Hommerson*, 2014 IL 115638, ¶ 8.

¶ 33 The Act affords indigent defendants the right to counsel beyond the first stage of proceedings. 725 ILCS 5/122-4 (West 2012). In fact, it has been determined that the Act cannot perform its function unless the attorney appointed to represent an indigent petitioner ascertains the basis of his complaints, shapes those complaints into appropriate legal form, and presents them to the court. *People v. Suarez*, 224 Ill. 2d 37, 46 (2007) (citing *People v. Slaughter*, 39 Ill. 2d 278, 285 (1968)). Thus, the intent of the Act is that, in the second and third stage of postconviction proceedings, defendants are afforded the advantages of representation. See *People v. Pendleton*, 223 Ill. 2d 458, 472-73 (2006).

¶ 34 On the other hand, a defendant has a right to proceed *pro se* in postconviction proceedings. 725 ILCS 5/122-4 (West 2012). However, a defendant must "knowingly and intelligently relinquish his right to counsel," and his waiver "must be clear and unequivocal, not ambiguous." *People v. Baez*, 241 Ill. 2d 44, 115-16 (2011).

- 7 -

¶ 35        Relevant to the controversy in this case, it is settled that there is no constitutional right to assistance of counsel during postconviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Johnson v. Avery*, 393 U.S. 483, 487-88 (1969); *People v. Hardin*, 217 Ill. 2d 289, 299 (2005). Accordingly, this court has explained that "[t]he right to assistance of counsel in postconviction proceedings is a matter of legislative grace, and a defendant is guaranteed only the level of assistance provided by the Post-Conviction Hearing Act." *Hardin*, 217 Ill. 2d at 299. This court has determined that the Act provides a postconviction petitioner with "reasonable" assistance. *Id.*; *People v. Owens*, 139 Ill. 2d 351, 358-59 (1990).

¶ 36        However, a defendant may relinquish his right to counsel in three ways: waiver, forfeiture, and waiver by conduct. *Ames*, 2012 IL App (4th) 110513, ¶ 26; *United States v. Goldberg*, 67 F.3d 1092, 1099 (3d Cir. 1995). Taking each in turn, a waiver is an intentional relinquishment or abandonment of a known right or privilege. *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938); *People v. Blair*, 215 Ill. 2d 427, 444 n.2 (2005); *Kidd*, 178 Ill. 2d at 104.

¶ 37        Regarding forfeiture, our appellate court has held that a defendant may forfeit his right to counsel. See *Ames*, 2012 IL App (4th) 110513. Many state and federal courts have held likewise. See *State v. Nisbet*, 2016 ME 36, ¶¶ 34-39, 134 A.3d 840; *State v. Holmes*, 302 S.W.3d 831, 840 (Tenn. 2010); *Commonwealth v. Means*, 907 N.E.2d 646, 659-60 (Mass. 2009); *State v. Hampton*, 92 P.3d 871, 874-75 (Ariz. 2004); *Goldberg*, 67 F.3d at 1101-02; *Gilchrist v. O'Keefe*, 260 F.3d 87, 100 (2d Cir. 2001). Forfeiture is defined as the failure to make the timely assertion of the right. *Blair*, 215 Ill. 2d at 444 n.2. Forfeiture results in the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right. *Id.*; *Goldberg*, 67 F.3d at 1100.

¶ 38        Waiver by conduct combines elements of waiver and forfeiture. *Ames*, 2012 IL App (4th) 110513, ¶ 34. A defendant can waive his right to counsel through conduct as well as words. *United States v. Oreye*, 263 F.3d 669, 670 (7th Cir. 2001). Once a defendant has been warned that he will lose his right to counsel if he engages in dilatory tactics, any misconduct thereafter may be treated as an implied request to proceed *pro se* and, thus, as a waiver by conduct of the right to counsel. *Goldberg*, 67 F.3d at 1100. Waiver of counsel can be implied from the circumstances of the case. See *State v. Weiss*, 637 N.E.2d 47, 50 (Ohio Ct. App. 1993). Waiver of the right to counsel must depend, in each case, upon the particular circumstances of that case. *People v. Lego*, 168 Ill. 2d 561, 565 (1995).

¶ 39                                    A. Defendant's Waiver by Conduct

¶ 40        On appeal, the State argues that defendant was warned that he stood to lose his right to counsel if his conduct continued. The State maintains that on November 21, 2013, defendant was made aware that he would have to work with the public defender, hire private counsel, or represent himself. According to the State, the record thus establishes that defendant was warned that, if he could not get along with appointed counsel, he had two other choices. The State contends that defendant's waiver by conduct may be established by inference from the facts. The State maintains that defendant's refusal to get along with appointed counsel and repeated failure to retain private counsel demonstrated waiver by conduct of his right to counsel. Defendant responds that the circuit court failed to warn him that he could lose his right to counsel through his continued conduct. We reject defendant's contention that no warning was given.

¶ 41    Waivers by conduct are not "waiver" cases in the true sense of the word. In many situations there will be defendants who engage in dilatory conduct but who vehemently object to being forced to proceed *pro se*. These defendants cannot truly be said to be "waiving" their rights because although they are voluntarily engaging in misconduct knowing what they stand to lose, they are not affirmatively requesting to proceed *pro se*. *Goldberg*, 67 F.3d at 1101; see *United States v. Fazzini*, 871 F.2d 635, 642 (7th Cir. 1989) (defendant who was warned about consequences of dilatory conduct insisted he was not waiving his right to counsel).

¶ 42    Waiver by conduct requires that a defendant receive a warning about the consequences of his conduct, including the risks of proceeding *pro se*. See *Illinois v. Allen*, 397 U.S. 337, 343 (1970); *Goldberg*, 67 F.3d at 1101. The key to waiver by conduct is misconduct occurring after an express warning has been given to the defendant about the defendant's behavior and the consequences of proceeding without counsel. *Goldberg*, 67 F.3d at 1101; *Means*, 907 N.E.2d at 657-58. A defendant who engages in dilatory conduct after having been warned that such conduct will be treated as a request to proceed *pro se* cannot complain that a court is depriving him of his right to counsel. *Goldberg*, 67 F.3d 1101.

¶ 43    The State contends that, in November 2013 when the circuit court informed defendant of his three choices and the consequences thereof, that was all the warning that defendant was due. According to the State, defendant, through his conduct, over the following several months, rejected two appointed attorneys and failed to hire private counsel and thus chose to proceed *pro se*.

¶ 44    The State argues that, similarly, in *United States v. Pittman*, 816 F.3d 419, 422 (6th Cir. 2016), although dealing with the constitutional right to counsel at trial, when the defendant's fourth attorney moved to withdraw, the court denied that request and admonished the defendant that, as an indigent defendant, he had a right to appointed counsel but had no right to choose which attorney would represent him. The court explained that

> "[t]he stakes at that point were clear: [defendant] could (1) maintain his current appointed counsel, (2) hire an attorney at his own expense, or (3) represent himself. When he continued to express dissatisfaction with his lawyers and declined to hire someone new, the district court reasonably concluded that only the third option remained: proceeding *pro se*." *Id.* at 425-26.

See also *Oreye*, 263 F.3d at 670 (holding that, if you are given several options and turn down all but one, you have selected the one you did not turn down).

¶ 45    Here, the record reflects that, as early as November 2013, defendant was expressly warned that, if he refused to cooperate with appointed counsel, then he had to inform the court whether he wanted to retain counsel or proceed *pro se*. On February, 20, 2014, the court again advised defendant that, if "he could not get along with the public defender, then he would either have to hire private counsel or represent himself." Further, appointed counsel informed the court that defendant had "fired" him. On April 24, 2014, the court recognized that defendant wanted nothing to do with appointed counsel and that defendant continued to request time to hire private counsel. Moreover, at the June 2014 hearing, the court instructed defendant that he could not choose which public defender he was going to have and allowed the public defender to withdraw. The question then became whether defendant wanted to hire private counsel or represent himself. The court again warned defendant that he had to be ready with private counsel or appear *pro se* at the hearing set for July 2014. Thus, we find that defendant received

- 9 -

sufficient warning that he could lose his right to counsel through his continued conduct and then would be required to represent himself.

¶ 46 Defendant argues that he never said he wanted to represent himself and instead told the court he wanted counsel's help; thus, he never waived his right to counsel. But the absence of an explicit request does not prove the absence of an implied decision. " '[I]f a person is offered a choice between three things'—an appointed attorney, hired counsel, or self-representation— 'and says "no" to the first and the second, he's chosen the third even if he stands mute when asked whether the third is indeed his choice.' " *Pittman*, 816 F.3d at 426 (quoting *Oreye*, 263 F.3d at 670-71).

¶ 47 In the case at bar, defendant was offered a choice of proceeding with appointed counsel, retaining counsel, or proceeding *pro se* on several occasions. Defendant's failure to work with appointed counsel, in November 2013 and from February to June 2014, and his failure to procure private counsel, from February to June 2014, manifested his choice to proceed *pro se*. Moreover, defendant confirmed that choice at the conclusion of the hearing on the motion to dismiss in July 2014, when he, albeit reluctantly, responded affirmatively to the court's question of whether he still wanted to represent himself at the evidentiary hearing.

¶ 48                                    B. Knowing and Intelligent Waiver

¶ 49 The State also argues that defendant's waiver by conduct was knowing and intelligent because he was sufficiently aware of his right to counsel and the usefulness of counsel in postconviction proceedings. According to the State, this was evidenced by the facts that defendant had been informed that appointed counsel would acquire his sentencing hearing transcripts and both appointed attorneys had discussed with defendant amendments to his *pro se* petition. The State further argues that defendant had been fully advised of the three options available to him and was warned of the consequences of his continued conduct; thus there was a knowing and intelligent choice of waiver of counsel.

¶ 50 Commensurate with Illinois's statutory right to appointed counsel in postconviction proceedings is a defendant's ability to waive that right, so long as the defendant's waiver is voluntary, knowing, and intelligent. *Baez*, 241 Ill. 2d at 115-16; *People v. Redd*, 173 Ill. 2d 1, 21 (1996) (the defendant's waiver of counsel must be voluntarily, knowingly, and understandingly made); *People v. Reid*, 2014 IL App (3d) 130296, ¶ 11 (the requirement that a waiver be knowing and voluntary applies to both constitutional and statutory rights); *People v. Gray*, 2013 IL App (1st) 101064, ¶ 23 (in postconviction proceedings, a defendant must knowingly and intelligently relinquish his right to counsel); *People v. Vernón*, 396 Ill. App. 3d 145, 152 (2009); *Commonwealth v. Stossel*, 2011 PA Super, ¶ 5; 725 ILCS 5/122-4 (West 2012).

¶ 51 The requirement of a knowing and intelligent choice calls for nothing less than a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. *Patterson v. Illinois*, 487 U.S. 285, 292 (1988); *Lego*, 168 Ill. 2d at 564-65. The determination of whether there has been an intelligent waiver of the right to counsel must depend upon the particular facts and circumstances of each case, including the background, experience, and conduct of the accused. *Kidd*, 178 Ill. 2d at 104-05. The entire record should be considered in determining whether the waiver was knowingly and understandingly made. *Redd*, 173 Ill. 2d at 21.

¶ 52    Further, it is not necessary that a defendant verbally waive his right to counsel; so long as the circuit court has given the defendant sufficient opportunity to have the assistance of appointed counsel, defendant's actions that have the effect of depriving defendant of appointed counsel will establish a knowing and intentional choice. *Fazzini*, 871 F.2d at 642 (citing *Wilks v. Israel*, 627 F.2d 32, 35-36 (7th Cir. 1980)); *United States v. Moore*, 706 F.2d 538, 539-40 (5th Cir. 1983).

¶ 53    Indeed, this case involves facts that closely parallel the facts in *Fazzini*. The judge in this case, like the district court judge in *Fazzini*, faced a defendant who refused to cooperate with numerous appointed attorneys, who was warned of the consequences that his failure to cooperate would have, and who insisted, despite his conduct, that he was not waiving his right to appointed counsel. We agree with the Fifth and Seventh Circuits that, given this set of circumstances, the defendant has knowingly and intelligently waived his right to appointed counsel. *Moore*, 706 F.2d at 540; *Fazzini*, 871 F.2d at 642; see *United States v. Alden*, 527 F.3d 653, 660 (7th Cir. 2008) (finding that, as long as the district court has given a defendant sufficient opportunity to retain the assistance of appointed counsel, defendant's actions that have the effect of depriving himself of appointed counsel will establish a knowing and intentional choice); *United States v. Irorere*, 228 F.3d 816, 828 (7th Cir. 2000) (holding that, where a defendant's lack of counsel was caused by his own refusal to cooperate with the counsel appointed for him and where the defendant was made aware of the possible consequences of his refusal to cooperate, the district court's decision to not appoint new counsel for the defendant does not constitute an abuse of discretion); *United States v. Harris*, 2 F.3d 1452, 1455 (7th Cir. 1993) (finding a voluntary and informed waiver where the defendant refused to cooperate with his lawyers and was told that no substitute counsel would be appointed for him).

¶ 54    Notably, the record establishes that defendant was repeatedly informed that Kramarsic, his second appointed counsel, would be his last and that, if he could not get along with appointed counsel, his choice was to hire an attorney or proceed *pro se*. The court stressed to defendant the importance of cooperating with the efforts of counsel to represent his interests, and the court expressly and repeatedly made clear to defendant that it would not appoint counsel to succeed Kramarsic. This admonishment served to warn defendant that if he wanted continuing legal representation he needed to work productively with appointed counsel or retain counsel. Defendant did neither.

¶ 55    At the February 2014, hearing, when defendant sought an extension of time to retain counsel after firing appointed counsel and acting aggressively toward him, the court twice admonished defendant that it could not give him another public defender but could let him hire somebody. The court then granted defendant a 60-day continuance to hire private counsel. In April 2014, when defendant made it clear that he did not want to work with appointed counsel, the court granted defendant more time to retain counsel. At the June 2014 hearing, after allowing appointed counsel to withdraw and granting a 35-day continuance, the court informed defendant to either have retained counsel or be prepared to represent himself in the future. Thus, the circuit court took extraordinary pains to accommodate defendant's desire to retain private counsel.

¶ 56    Although defendant argues he was not apprised by the court of the advantages of representation of counsel and of the dangers and pitfalls of representing himself, he has not

- 11 -

cited any law in support of the contention that such admonishments are required before a defendant waives counsel by conduct in postconviction proceedings. Further, his own statements indicating his reluctance to represent himself show his awareness of the advantages of representation. When left with the option of hiring an attorney or proceeding *pro se*, defendant responded, "I can't represent myself." Further, when the court asked defendant whether he was ready to proceed on the State's motion to dismiss, he answered, "I got no attorney. I guess not."

¶ 57 Moreover, when both appointed attorneys informed defendant of how his petition could and should be amended, he rejected their representation and advice. Cappellini explained to the court in November 2013 that, "if the defendant is not going to listen to anything I tell him when I try to explain the law and he's going to tell me I'm wrong[,] I said, you can go *pro se*. You can get the transcripts and you can do that or else, I represent you as an attorney and I have to follow the law." Further, Kramarsic informed the court in February 2014 that it was clear that defendant did not wish to continue with him as counsel and it was certain that defendant did not wish to hear anything that Kramarsic had to say. Defendant responded, "I don't think he's trying to help me." In April 2014, Kramarsic advised the court that it was absolutely clear from conversations with defendant that he wanted nothing to do with Kramarsic. In June 2014, Kramarsic informed the court that defendant disagreed with his theory of the case and did not want Kramarsic involved with the case.

¶ 58 Consequently, when defendant wilfully persisted in his continued conduct, he knowingly and intelligently waived his right to counsel. See *Iowa v. Tovar*, 541 U.S. 77, 92 (2004) (citing *United States v. Ruiz*, 536 U.S. 622, 629 (2002) (holding that the law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply in general in the circumstances—even though the defendant may not know the specific detailed consequences of invoking it)).

¶ 59 In sum, defendant's inability to resolve conflicts with his court-appointed attorneys or to retain private counsel, which caused the case to be continued several times, made it clear that defendant was not entitled to another continuance or attorney. Only when defendant's dilatory efforts served to thwart the administration of justice by further delaying the hearing did the court require defendant to represent himself. *People v. Myles*, 86 Ill. 2d 260, 270 (1981). We find that defendant's continued refusal to cooperate with his court-appointed attorneys and failure to hire retained counsel constituted a knowing and intelligent election to proceed *pro se*. As previously noted, defendant said "no" to the public defender by refusing to cooperate with and rejecting the assistance of two appointed attorneys, between November 2013 and June 2014. Defendant also said "no" to retaining counsel when he failed to do so from February 2014 to July 2014. We also find, by his conduct, defendant chose to proceed *pro se*. See *Oreye*, 263 F.3d at 670-71 (holding if a person is offered a choice between three things and says no to the first and second, he has chosen the third); *Alden*, 527 F.3d at 660-61 (same).

¶ 60 Accordingly, we conclude that defendant was expressly warned that his continued conduct would result in waiver of his statutory right to reasonable assistance of counsel and would require him to proceed *pro se*. See *Myles*, 86 Ill. 2d at 268-71 (holding that the granting of a continuance for the substitution of counsel, necessarily depends upon the particular facts and circumstances surrounding that request). Therefore, the circuit court did not err, in this case, by requiring defendant to represent himself. As a result, we reverse the judgment of the appellate

- 12 -

court. Consequently, we need not address the State's alternative argument that defendant forfeited his right to counsel through his egregious misconduct.

¶ 61    Although we decline to impose specific requirements on circuit courts faced with difficult defendants in postconviction proceedings, we instruct them to warn defendants of the consequences of their repeated refusals to work with appointed counsel and the difficulties of self-representation before requiring them to proceed *pro se*. See, *e.g.*, *Baez*, 241 Ill. 2d at 65-68, 113-18; accord 725 ILCS 5/122-4 (West 2012).

¶ 62    Finally, before the appellate court, defendant additionally contended that the circuit court applied an incorrect standard of proof at the evidentiary hearing. However, the appellate court did not address this issue because the court considered its decision on the waiver issue to be dispositive. 2017 IL App (3d) 140793, ¶ 1. Therefore, we remand the cause to the appellate court for disposition of defendant's remaining contention. See *People v. Givens*, 237 Ill. 2d 311, 339 (2010).

¶ 63                                    III. CONCLUSION

¶ 64    For the foregoing reasons, the judgment of the appellate court is reversed, and the cause is remanded to the appellate court to consider defendant's additional contention.

¶ 65    Appellate court judgment reversed.

¶ 66    Cause remanded.