2019 IL App (2d) 170523-U
No. 2-17-0523
Order filed November 19, 2019

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 06-CF-1371 |
| DANIEL GARCIA-CORDOVA, | ) ) ) | Honorable Patricia Sowinski Fix, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices McLaren and Hutchinson concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The order dismissing defendant's postconviction petition on the State's motion was affirmed.  There was no need to remand the matter for an inquiry regarding a potential conflict of interest or for the resolution of any claim.  Defendant failed to make a substantial showing of a constitutional violation.

¶ 2    Defendant, Daniel Garcia-Cordova,[1] appeals from the second-stage dismissal of his "supplemental" petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)).  For the reasons that follow, we affirm.

_____

[1] In his notice of appeal, and on the cover of his brief, defendant identifies himself as Daniel

¶ 3                                            I. BACKGROUND

¶ 4      In 2007, defendant was convicted of predatory criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1) (West 2006)) and was sentenced to 24 years in prison.  He was represented at trial by two assistant public defenders, John Bailey and Jennifer Snyder.  In December 2011, we affirmed defendant's conviction and sentence on direct appeal.  *People v. Garcia-Cordova*, 2011 IL App (2d) 070550-B.

¶ 5      Meanwhile, in August 2009, defendant filed a *pro se* petition for postconviction relief. Given the unavailability of the trial transcripts due to the pending direct appeal, the court advanced the petition for second-stage proceedings.

¶ 6      In October 2010, assistant public defender Elizabeth Schroeder filed an amended postconviction petition on defendant's behalf.  In April 2011, the court dismissed the petition on the State's motion without an evidentiary hearing.  In September 2012, we reversed and remanded the matter "for further second-stage proceedings to allow postconviction counsel to comply with Rule 651(c)."  *People v. Garcia-Cordova*, 2012 IL App (2d) 110514-U, ¶ 18.

¶ 7      Schroeder was the first counsel who represented defendant on remand.  After spending the better portion of a year investigating the matter, she filed another postconviction petition on defendant's behalf in September 2013.  The only issue raised in that petition was ineffective assistance of trial counsel for failing to investigate defendant's mother as a potential character

_____

Cordova-Garcia.  He was indicted, however, under the name Daniel Garcia-Cordova, and that was the name that we used in defendant's two prior appeals.  It was also the name that was listed on defendant's supplemental postconviction petition.  To be consistent with our prior dispositions, we will refer to defendant as Daniel Garcia-Cordova.

witness. The same day that this petition was filed, assistant state's attorney Matthew DeMartini noted in open court that Schroeder might have a conflict of interest, given that she was alleging ineffective assistance on the part of her fellow assistant public defenders. The court, Judge George Bridges presiding, set the matter for a hearing on that issue on September 27, 2013, so that defendant could be present. On that date, although defendant confirmed that he was in accord with the latest petition that Schroeder filed on his behalf, he did "not wish to have the Public Defender represent [him] in this matter." Schroeder took no position on whether it was advisable to appoint outside counsel, but DeMartini indicated that he believed that appointing another attorney was "the appropriate way to go." The court appointed James McAuliff, an attorney in private practice, to represent defendant in connection with the postconviction proceedings.

¶ 8    McAuliff represented defendant between September 2013 and July 2014. McAuliff investigated defendant's case but never filed anything on his behalf. It seems from the record that the reason McAuliff was discharged from the case was that he moved to Indiana. Attorney Latonya Burton, another private practitioner, then represented defendant between August 2014 and August 2015. Burton apparently was discharged from the case due to the expiration of the public defender's "conflict contract" with outside counsel. Like McAuliff, Burton investigated defendant's case but did not file anything on his behalf. After Burton was discharged, the court re-appointed the public defender to represent defendant.

¶ 9    Assistant public defender Jeffrey Facklam then spent more than a year investigating defendant's case. During that time, the matter was reassigned to Judge Patricia Sowinski Fix. In February 2017, Facklam filed a "supplemental post conviction petition" on defendant's behalf. In that petition, defendant alleged ineffective assistance of trial counsel for (1) failing to discuss with defendant the issue of lesser included offenses, (2) failing to investigate defendant's case in support

of a motion for a bill of particulars to narrow down the dates of the offenses alleged in the indictment, (3) failing to cross-examine the child victim, and (4) failing to allow defendant to testify on his own behalf. Neither the attorneys, defendant, nor the court questioned whether Facklam had a conflict of interest in raising those claims. The State moved to dismiss the supplemental petition. The court granted that motion, and defendant timely appealed.

¶ 10                                    II. ANALYSIS

¶ 11     "The Act provides a method for an individual, subject to a criminal sentence, to challenge a conviction by alleging it was the result of a substantial denial of federal or state constitutional rights or both." *People v. Lesley*, 2018 IL 122100, ¶ 31. There are three stages of postconviction proceedings. *Lesley*, 2018 IL 122100, ¶ 31. At the first stage, the court considers whether the petition is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2018); *Lesley*, 2018 IL 122100, ¶ 31. If the matter advances to the second stage, the court may appoint counsel for the defendant, and counsel may amend the petition. *Lesley*, 2018 IL 122100, ¶¶ 31-32. The State may then move to dismiss the petition. *Lesley*, 2018 IL 122100, ¶ 32. If the court denies such motion, the matter proceeds to a third-stage evidentiary hearing to determine the merits of the defendant's claims. *Lesley*, 2018 IL 122100, ¶ 32.

¶ 12     The court here dismissed defendant's supplemental petition at the second stage. At this stage, "the petitioner bears the burden of making a substantial showing of a constitutional violation." *People v. Domagala*, 2013 IL 113688, ¶ 35. In evaluating the petition, the court must accept as true all well-pleaded facts and refrain from making its own factual findings. *People v. Kirkpatrick*, 2012 IL App (2d) 100898, ¶ 13. We review a dismissal order *de novo*. *People v. Henry*, 2016 IL App (1st) 150640, ¶ 39. This means that we do not "defer to the trial court's

judgment or reasoning," but we instead analyze the petition "completely independent of the trial court's decision." *Henry*, 2016 IL App (1st) 150640, ¶ 39.

¶ 13                                   A. Conflict of Interest

¶ 14    Defendant first argues that, because Facklam challenged the effectiveness of his fellow assistant public defenders, the court "should have conducted an inquiry to ascertain whether the defendant had conflict-free advocacy." Given that the record does not disclose either the organizational structure of the Lake County public defender's office or the "specific working relationship" between Facklam and defendant's prior attorneys, defendant asks us to remand the matter for an inquiry regarding whether Facklam had a conflict of interest.

¶ 15    The State opposes defendant's request for a remand.  According to the State, case law does not compel a remand for an inquiry regarding a "hypothetical conflict of interest."

¶ 16    Criminal defendants are entitled to effective assistance of counsel, which includes "assistance by an attorney whose allegiance to his client is not diluted by conflicting interests or inconsistent obligations."  *People v. Cole*, 2017 IL 120997, ¶ 22.  It is not a *per se* conflict of interest for an assistant public defender to argue that his or her colleague provided ineffective assistance to a client.  *People v. Banks*, 121 Ill. 2d 36, 43 (1987).  Instead, in such situations, "a case-by-case inquiry should be conducted to determine whether any circumstances peculiar to the case indicate the presence of an actual conflict of interest."  *Banks*, 121 Ill. 2d at 44.

¶ 17    In *People v. Spreitzer*, 123 Ill. 2d 1 (1988), our supreme court clarified that the appellate analysis of a potential conflict of interest differs depending on whether the defendant raised the issue in a timely manner at the trial level.  Where a potential conflict is brought to the court's attention at an early stage of the proceedings, the court must either appoint separate counsel to represent the defendant or take adequate measures to evaluate whether the risk of conflict requires

separate counsel. *Spreitzer*, 123 Ill. 2d at 18. If the court fails to fulfill that duty, the judgment may be reversed on appeal without a showing of specific prejudice. *Spreitzer*, 123 Ill. 2d at 18. Where, however, the potential conflict of interest is not brought to the court's attention, a defendant may obtain reversal of the judgment only by demonstrating that counsel labored under an actual conflict that adversely affected his or her performance at trial. *Spreitzer*, 123 Ill. 2d at 18.

¶ 18    A trial court is not obligated to *sua sponte* raise the issue of a potential conflict. This is made clear by *People v. Hardin*, 217 Ill. 2d 289 (2005), a case which is analogous to the matter at bar. The defendant in *Hardin*, who was represented at trial by assistant public defender Jameson Kunz, was convicted of various offenses. *Hardin*, 217 Ill. 2d at 291, 295. The defendant subsequently filed a *pro se* postconviction petition alleging ineffective assistance of trial counsel. *Hardin*, 217 Ill. 2d at 295. The court appointed assistant public defender Ricky Holman to represent the defendant in connection with that petition, even though the defendant expressed a desire to be represented by an attorney who was not affiliated with the public defender's office. *Hardin*, 217 Ill. 2d at 295-96. Holman filed an amended petition on the defendant's behalf that included claims that Kunz provided ineffective assistance at trial. *Hardin*, 217 Ill. 2d at 296. The defendant then sent letters to both Holman and the court expressing his distrust of the public defender's office and articulating his displeasure with Holman's representation. *Hardin*, 217 Ill. 2d at 296-97. The court nevertheless granted the State's motion to dismiss the petition, and the defendant appealed. *Hardin*, 217 Ill. 2d at 298.

¶ 19    On appeal, the defendant argued that "the trial court should have conducted an inquiry to ensure that there was no conflict of interest between his postconviction public defender and his trial public defender." *Hardin*, 217 Ill. 2d at 299. Our supreme court rejected the notion that *Banks* required the trial court to conduct a *sua sponte* investigation as to whether Holman had a

conflict of interest. *Hardin*, 217 Ill. 2d at 301. The court emphasized that, pursuant to *Spreitzer*, *Banks*' requirement to conduct a case-by-case inquiry arises only where the trial court is apprised of the potential conflict. *Hardin*, 217 Ill. 2d at 302. The court clarified that a trial court's duty in this respect will arise where the defendant "present[s] the gist of such a conflict" by "sketch[ing], in limited detail, a picture of how the working relationship between the public defenders created an appearance of impropriety." *Hardin*, 217 Ill. 2d at 303. Factors that are relevant in that regard include (1) "whether the two public defenders were trial partners in the defendant's case," (2) "whether they were in hierarchical positions where one supervised or was supervised by the other," and (3) "whether the size, structure, and organization of the office in which they worked affected the closeness of any supervision." *Hardin*, 217 Ill. 2d at 303. Applying these rules to the facts at hand, the court affirmed the second-stage dismissal of the defendant's petition, refusing to "sanction a fishing expedition to allow the defendant to cloud Holman's performance." *Hardin*, 217 Ill. 2d at 305.

¶ 20    *Hardin* is dispositive here. At the trial level, defendant never questioned whether Facklam had a conflict of interest. Consequently, the court had no duty to explore that issue *sua sponte*. On appeal, defendant does not contend that Facklam labored under an actual conflict of interest. Thus, there is no basis to disturb the judgment dismissing defendant's supplemental petition. Although defendant is correct that the record does not reflect the organizational structure of the Lake County public defender's office or the particular working relationships between Facklam and the other assistant public defenders who previously represented defendant, *Hardin* is clear that it was defendant's burden to present that information to the court.

¶ 21    Defendant mentions that assistant state's attorney DeMartini raised an issue in September 2013 as to whether assistant public defender Schroeder might have a conflict of interest under

similar circumstances. In response to the prosecutor's concerns, Judge Bridges appointed conflict counsel. Defendant's first conflict counsel moved out of state, and the replacement conflict counsel was discharged upon the termination of the public defender's "conflict contract." By the time Facklam filed the supplemental petition on defendant's behalf in February 2017, a different prosecutor, defense attorney, and judge were assigned to the case. Under those circumstances, the prior inquiry regarding Schroeder does not change our opinion that it was defendant's burden to raise the issue of Facklam's potential conflict in the trial court. Accordingly, defendant is not entitled to the remand that he requests.

¶ 22                  B. Alleged Failure to Consider All Postconviction Issues

¶ 23    As explained above, in September 2013, Schroeder filed a postconviction petition on defendant's behalf advancing one claim: ineffective assistance of trial counsel for failing to investigate defendant's mother as a potential character witness. In February 2017, Facklam filed a supplemental petition on defendant's behalf alleging four claims, none of which related to defendant's mother. The State moved to dismiss the supplemental petition, the court granted that motion, and defendant appealed that order.

¶ 24    For his second issue on appeal, defendant argues that, because neither the State nor the court addressed the claim that Schroeder raised in September 2013, we should "remand the matter so that issue can be addressed." Defendant asks us to "retain jurisdiction so that an adverse ruling on the outstanding claim may be appealed."

¶ 25    In opposing defendant's request for a remand on this basis, the State contends that "[t]here is absolutely no indication in the record that Attorney Facklam intended to incorporate" the subject claim into the supplemental petition. According to the State, even if the claim "somehow remained

viable," it lacks merit, given that the proposed testimony of defendant's mother would not have changed the result of trial.

¶ 26    Defendant's argument depends on the assumption that the claim that Schroeder raised in September 2013 was "lost in the procedural morass of this case" as opposed to abandoned. The record shows otherwise. Facklam spent more than a year investigating defendant's case before filing the supplemental petition in February 2017. At various court appearances during that time, Facklam informed the court that he "reviewed all of the transcripts," consulted with defendant, and interviewed witnesses, some of whom resided out-of-state. Facklam clearly conducted a thorough inquiry with defendant's input.

¶ 27    The record also confirms that Facklam was aware of the procedural history of defendant's postconviction proceedings, including the fact that Schroeder filed a petition on defendant's behalf in September 2013. For example, when Facklam requested a continuance in February 2016 to proceed with his investigation, the court engaged in the following colloquy with him:

> "THE COURT: All right. I'll give you 90 days. But let's see if we can have something done because this was filed in '13, so.
>
> MR. FACKLAM: Just so the Court is aware, I've been on the case since September or November.
>
> THE COURT: Was somebody else from your office on it before that or a private attorney?
>
> MR. FACKLAM: It was Liz Schroeder when it first got filed, then it went to a conflict attorney, and then got reassigned to me late 2015."

During another appearance, again in response to the court's concerns about how long it was taking to complete the investigation, Facklam acknowledged the existence of the September 2013

petition. Thus, there is no merit to defendant's suggestion that the claim that Schroeder raised got "lost in the procedural morass."

¶ 28 The record instead supports a conclusion that Facklam chose not to raise this claim in the supplemental petition. Defendant stresses that Facklam styled the pleading as "supplemental," as if that implied that Facklam did not intend to abandon the claim that Schroeder raised. At the beginning of the supplemental petition, however, Facklam wrote that such petition was meant to supplement defendant's "previously filed *pro se* Petition for Post-Conviction Relief"—*i.e.*, the petition that defendant filed in August 2009. Nowhere in the supplemental petition or during the hearing on the State's motion to dismiss that petition did Facklam express an intent to preserve the claim that Schroeder raised in September 2013.

¶ 29 In support of his request for a remand, defendant notes that several of his claims in the supplemental petition were meritless from the outset because they were procedurally defaulted. Be that as it may, the record belies defendant's suggestion that any claim fell through the cracks. Defendant thus is not entitled to a remand on this basis.

¶ 30 C. Ineffective Assistance of Counsel: Bill of Particulars

¶ 31 Defendant finally argues that the order granting the State's motion to dismiss the supplemental petition should be reversed, and the matter remanded for a third-stage evidentiary hearing, because the court improperly relied on matters outside of the record. Defendant focuses his argument on the second claim that he raised in his supplemental petition: ineffective assistance of trial counsel for failing to investigate defendant's case in support of a motion for a bill of particulars to narrow down the dates of the offenses alleged in the indictment. According to defendant, in ruling on this claim, the court improperly relied on its own familiarity with one of the trial attorneys, Bailey, and inappropriately questioned Facklam about Bailey's legal

experience. Defendant maintains that his claim that Bailey conducted an inadequate investigation raised factual issues that required an evidentiary hearing.

¶ 32   The State responds that defendant failed to make a substantial showing of a denial of constitutional rights, given that the result of trial would have been the same even had defendant's counsel conducted a more thorough investigation.

¶ 33   The following additional background is necessary to understand the parties' arguments. In April 2006, defendant was charged by indictment with two counts of predatory criminal sexual assault of a child. Count I alleged that defendant placed his penis in the victim's mouth, while count II alleged that he placed his finger in her vagina. The State alleged that both offenses occurred "on or between" April 5, 2005, and April 5, 2006. In July 2006, defendant was indicted on six additional counts of predatory criminal sexual assault of a child pertaining to the same victim. The State alleged that each of these offenses occurred between April 5, 2005, and April 5, 2006. Count III alleged that defendant placed his penis in the victim's vagina. Counts IV through VIII, which were identical to each other and to count II, alleged that defendant placed his finger in the victim's vagina.

¶ 34   Prior to trial, defendant filed a motion for a bill of particulars and a motion to dismiss the indictment. In the motion for a bill of particulars, defendant complained of the lack of specificity in the indictment relating to the dates of each offense. In the motion to dismiss, he complained that counts II and IV through VIII were indistinguishable from one other. At the hearing on the motions, the prosecutor explained that the indictment was based on information obtained from both the victim and defendant. Specifically, the victim told investigators that defendant put his finger inside her vagina "multiple times," and defendant told the police that he put his hands down the victim's pants "not more than five times." The court ordered the State to answer the bill of

particulars to distinguish the conduct at issue in counts II and IV through VIII. The court reserved ruling on the motion to dismiss.

¶ 35    In its "response to motion for a bill of particulars and motion to dismiss indictment," the State clarified that count IV related to conduct that occurred "while on the couch" and that counts V through VII related to conduct that occurred "while in bed." The State agreed to dismiss count VIII.    When the matter returned to court, defendant argued that the State's response did not sufficiently differentiate the conduct at issue in the various counts. The court ordered the State to file an amended bill of particulars to further distinguish the counts.

¶ 36    The State filed a "first amended response to motion for a bill of particulars and motion to dismiss indictment and motion to reconsider ruling." The State argued that it had alleged the offenses with as much specificity as possible. Nevertheless, the State explained that it had recalled the grand jury, which clarified that the conduct related to counts II and IV through VII occurred on five different dates between April 5, 2005, and April 5, 2006. After reviewing the relevant case law, and in light of the State's clarifications, the court denied defendant's motion to dismiss the indictment.

¶ 37    The matter proceeded to trial. The court granted a directed verdict in defendant's favor on counts III, VI, and VII. The jury found defendant guilty as to counts I, IV, and V but not guilty as to count II. The court entered judgments in defendant's favor notwithstanding the verdict on counts IV and V. The court sentenced defendant to 24 years in prison on count I.

¶ 38    In his supplemental postconviction petition, one of defendant's claims was ineffective assistance of trial counsel for "fail[ing] to investigate defendant's case in support of their motion for a bill of particulars asking the State to further narrow down the alleged dates of offense in the indictment." In support of this claim, defendant noted that certain of the victim's statements that

were admitted at trial suggested that the sexual assaults occurred at 2320 Gilead Avenue, Apartment #1, in Zion, where defendant was living at the time of his arrest. Defendant also cited the following exchange at trial between defense counsel and the victim's mother:

"Q. Did you use to live with [defendant]?

A. Yes.

Q. Did you live with him in the house in Zion?

A. Yes.

Q. For how long?

A. Going on a year."

According to defendant, this portion of the victim's mother's testimony suggested that she lived with both defendant and the victim at 2320 Gilead Avenue, Apt. #1 "from sometime in 2005 up until defendant's arrest in April 2006."

¶ 39    In connection with the postconviction investigation, however, the defense allegedly "uncovered" evidence that defendant lived at this address for less than two months before he was arrested. Specifically, records submitted with the petition showed that (1) defendant was incarcerated in California from May 2, 2005, until July 5, 2005; (2) he resided at a different location in Zion from October 1, 2005, until February 2006; and (3) on February 23, 2006, he signed a lease with the victim's mother for the apartment where the sexual assaults allegedly occurred.

¶ 40    In light of this information, defendant alleged that his trial counsel "should have investigated this case in order to submit evidence in support of its motion for a bill of particulars to have the state narrow down when these acts allegedly occurred." According to defendant:

"Without this evidence, the Court allowed the State's answer to the bill of particulars to stand and did not grant the defendant's motion to narrow the dates. Had the defense presented evidence that the defendant did not live at that address in Zion between April 5, 2005 and late February 2006, the motion would have been granted. This is because it is impossible that these acts could have occurred in the location the complainant stated (2320 Gilead Ave., Apt. 1, Zion, IL) for more than 10 of the 12 months that the State included as the range for the dates of offense contained within the indictment. Additionally, the evidence [submitted with the postconviction petition] would have impeached [the victim's mother's] testimony that she had lived with the defendant and the complainant at the house on Gilead in Zion for 'going on a year.' ***

The defendant was prejudiced and denied effective assistance of trial counsel when they did not conduct any investigation seeking to show that the abuse could not have been going on for a year. Any evidence that defendant had been abusing the complainant for more than approximately 6 weeks at the house located at 2320 Gilead Ave., Apt. #1 in Zion, IL could have been disproved through substantial evidence that it would have been impossible for that the abuse [*sic*] to have occurred for more than approximately 6 weeks at that address. Had this been done, it would have cast doubt on all of the complainant's allegations made at trial through the [section] 115-10 witnesses and affected the ultimate outcome."

¶ 41    In its motion to dismiss the supplemental petition, the State argued that this claim was waived due to not being raised on direct appeal. Additionally, the State maintained that defendant failed to "articulate how a reduced date range would have benefited him," because (1) the indictment alleged that the sexual assaults took place between April 2005 and April 2006, and (2)

defendant's proposed evidence would have shown that he and the victim resided together from February 23 to April 5, 2006. Thus, the State argued, the information that defendant submitted with his petition "provides no benefit for the defense but actually supports the State's theory of the case." Moreover, the State maintained that there were three problems with defendant's claim that a narrowed date range could have been used to impeach the victim's mother: (1) the mother provided no substantive information at trial about defendant's criminal conduct, so impeaching her "would not be significant," (2) the portion of the mother's testimony that defendant cited was "unclear" as to exactly where she lived and when, and (3) "any reduction in the indicted date range would have helped the State's case, not [defendant's]."

¶ 42 During the hearing on the State's motion to dismiss the supplemental petition, the court engaged in the following colloquy with defense counsel, which defendant now argues was improper:

"THE COURT: Mr. Bailey was the primary attorney on this case; is that correct?

MR. FACKLAM: Yes.

THE COURT: And at the time he tried this case in 2008 [*sic*], he had been an attorney practicing as a supervisor within the Lake County public defender's office for how long approximately?

MR. FACKLAM: I don't know. He started in the 1990s.

THE COURT: Fair to say 15 years as an attorney?

MR. FACKLAM: Probably around there.

THE COURT: All right. And Mr. Bailey, at the time he tried this case, fair to say he had tried at least 20 cases to jury trial?

MR. FACKLAM: Sure. I assume so. Neither the State nor the defense attached any type of affidavit from Mr. Bailey for the court to consider at this juncture.

THE COURT: Understand.

MR. FACKLAM: And obviously the court isn't supposed to determine whether Mr. Bailey is potentially more credible than Mr. Garcia-Cordova at this stage."

The court granted the State's motion to dismiss the supplemental petition.

¶ 43   Defendant criticizes the court's comments but does little to defend the merits of his claim that his trial counsel provided ineffective assistance in connection with the investigation relating to the motion for a bill of particulars. As previously mentioned, we owe no deference to the court's reasoning but instead review defendant's claim independently. *Henry*, 2016 IL App (1st) 150640, ¶ 39. Even if the court's questions were inappropriate, that alone would not compel us to advance the matter for third-stage proceedings. Instead, the issue is whether defendant met his burden to make a "substantial showing of a constitutional violation." *Domagala*, 2013 IL 113688, ¶ 35. Specifically, defendant must make a substantial showing that "(1) his attorney's actions constituted errors so serious as to fall below an objective standard of reasonableness, and (2) absent these errors, there was a reasonable probability that his trial would have resulted in a different outcome." *Henry*, 2016 IL App (1st) 150640, ¶ 42. Given that defendant must satisfy both prongs, we need not consider whether defense counsel was deficient if defendant did not suffer prejudice. *Henry*, 2016 IL App (1st) 150640, ¶ 53.

¶ 44   Defendant failed to make a substantial showing that the result of his trial would have been different had his counsel uncovered the evidence that was later included with the supplemental petition. The indictment alleged that defendant sexually assaulted the victim sometime between April 5, 2005, and April 5, 2006. "The date of the offense is not an essential factor in child sex

offense cases"; "[a]s long as the crime occurred within the statute of limitations and prior to the return of the charging instrument, the State need only provide the defendant with the best information it has as to when the offenses occurred." *People v. Guerrero*, 356 Ill. App. 3d 22, 27 (2005).

¶ 45 Defense counsel argued at the hearing on the State's motion to dismiss the supplemental petition that the materials accompanying the petition would have supported an alibi defense. The documentation that defendant submitted, however, confirmed that defendant resided with the victim between February 23 and April 5, 2006, thus giving him ample opportunity to commit the charged offenses. We note that the trial evidence showed that defendant admitted to police officers on April 4, 2006, that he had sexually assaulted the victim as recently as three weeks earlier. That was consistent with what the victim told an investigator. Pursuing the bill of particulars with a view toward an alibi defense would not have changed the result of trial, as the materials that defendant submitted with his supplemental petition did not support an alibi defense.

¶ 46 Defendant also alleged that the documents attached to his supplemental petition would have been valuable to impeach the victim's mother with respect to how long defendant had resided at the location where the sexual assaults allegedly occurred. The victim's mother did not implicate defendant in any criminal activity, so there was no reason to impeach her testimony. To the extent that impeachment on this particular point could have helped the defense, we note that Sergeant Alan Lother of the Zion police department testified that defendant told him on April 4, 2006, that he had lived in Zion for approximately a year but that he had lived in his current apartment for only two or three months. Thus, the jury was already aware that defendant did not live in this location very long before the victim's allegations surfaced. Under these circumstances, and considering that we determined on direct appeal that the evidence against defendant was

"overwhelming" (*Garcia-Cordova*, 2011 IL App (2d) 070550-B, ¶ 75), defendant failed to make a substantial showing of a constitutional violation. Accordingly, the court properly granted the State's motion to dismiss the supplemental petition.

¶ 47                              III. CONCLUSION

¶ 48    For the reasons stated, we affirm the judgment of the Circuit Court of Lake County.

¶ 49    Affirmed.