2021 IL App (1st) 182160-U

No. 1-18-2160

Order filed March 26, 2021

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 09 CR 18501 |
| | ) | |
| REGINALD OWENS, | ) | Honorable |
| | ) | Charles P. Burns, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE HOFFMAN delivered the judgment of the court.
Presiding Justice Delort and Justice Cunningham concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The circuit court's dismissal of defendant's postconviction petition at the second stage is affirmed where defendant failed to demonstrate that postconviction counsel provided unreasonable assistance.

¶ 2     Defendant Reginald Owens appeals from the circuit court's grant of the State's motion to dismiss his *pro se* petition pursuant to the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2016)) at the second stage. He claims that his postconviction counsel was unreasonable for

failing to sufficiently investigate his claim that trial counsel was ineffective during plea bargaining. We affirm.

¶ 3    Defendant was charged by indictment with 15 counts, including attempt first degree murder (720 ILCS 5/8-4 (West 2008); 720 ILCS 5/9-1 (West 2008)) of the victims Alphonso Hall and Barron Hall,[1] arising from an incident on September 21, 2009. The transcripts of pretrial proceedings do not mention a plea offer to defendant from the State. Defendant and co-offender Billy Anderson proceeded to separate but simultaneous trials, defendant by jury and Anderson by bench.[2]

¶ 4    This court set out the facts at trial in its first order on direct appeal, and accordingly, this order only includes those facts necessary to resolve defendant's claim. See *People v. Owens*, 2014 IL App (1st) 122327-U.

¶ 5    At trial, Barron testified that he had multiple drug-related felony convictions and a conviction for unlawful use of a weapon by a felon. On September 21, 2009, he and Alphonso were outside of Barron's apartment on the 7100 block of South Ridgeland Avenue in Chicago during the day. He did not remember being on the block at night, but at some point he awoke in the hospital to discover he had been shot in the head, chest, and back. He did not recall the shooting, and ultimately was paralyzed due to these injuries.

¶ 6    On cross-examination, Barron testified that he remembered drinking alcohol outside of the apartment with Alphonso earlier in the day on September 21, 2009. At some point, he entered his

---

[1] Because Alphonso Hall and Barron Hall share the same last name, we refer to them by their first names.

[2] Billy Anderson is not a party to this appeal.

apartment at the request of police officers, but later returned outside because he heard Alphonso "arguing with some people."

¶ 7     Alphonso testified that he was currently incarcerated for a pending contempt charge and had a prior conviction for a drug-related offense. At approximately 9 p.m. on September 21, 2009, Alphonso was outside of Barron's apartment building when some men approached, briefly spoke with him and Barron, and left. He and Barron went to the liquor store and returned to the building, where Alphonso saw 9 to 10 people gather across the street. Alphonso called 911. Police officers arrived and argued with Barron, but the crowd had already dispersed.

¶ 8     Barron and Alphonso went inside briefly, then came back outside. Alphonso looked up and saw a man and a woman in a window on the second floor of Barron's building. The man said to Alphonso, "I'm the shooter," to which Alphonso responded, "Well, shoot me, you know; you got to pay for what you do; ain't no free bodies." Alphonso saw the man make a telephone call. Shortly thereafter, Alphonso saw two men approach on foot, and heard gunshots. Alphonso saw a bullet strike Barron in the head, and "felt shots through" his own body. He could see that each man had a firearm, but could not describe the weapons. The men were three to four feet from Alphonso when he heard the gunshots. Alphonso ran into Barron's apartment, then "blanked out." He identified defendant and Anderson in court as the shooters, and believed they fired over 10 times.

¶ 9     Alphonso went to the hospital for gunshot wounds to the liver, stomach, groin, chest, and thigh. He spoke with two Chicago police detectives in the hospital, and identified defendant in a photo array. Following his discharge, Alphonso identified defendant in a line-up at the police station.

¶ 10    Vivian Pettigrew testified that she lived on the 7100 block of South Ridgeland on September 21, 2009. That evening, she awoke to the sound of a man saying, "shoot, shoot." From her window, she saw two men, a "larger" man (Barron) and a "thinner" man (Alphonso), in a vestibule area across the street. She recognized Barron from the neighborhood, but she did not recognize Alphonso, who continued to say "shoot." A third man approached Barron and Alphonso, spoke to them, and walked away. Pettigrew then saw two different men in an alley, both of whom had firearms. These men approached Barron and Alphonso and shot them from "very close" range. The shooters walked away, and Pettigrew lost sight of them. She identified defendant and Anderson in court as the shooters. Defendant shot Alphonso, while Anderson shot Barron.

¶ 11    Police arrived shortly thereafter, but Pettigrew did not tell them what she saw because she was "[s]cared for [her] life." Prior to September 21, 2009, Pettigrew had witnessed defendant drive "recklessly," and wrote down his license plate number. On September 22, 2009, she went to the police station and relayed what she had witnessed and the license plate number. She also identified defendant in a photo array. When she returned home, she saw defendant and Anderson on the street and called the police. Shortly thereafter, officers arrived and spoke with Anderson. On October 8, 2009, she returned to the police station and identified defendant in a line-up.

¶ 12    Chicago police officer Beluso[3] testified that on September 22, 2009, he responded to an assignment of a "person-wanted" on the 7100 block of South Ridgeland. Beluso arrived in a marked vehicle and interviewed the individual who matched the description, whom Beluso identified in court as Anderson. Beluso completed a contact card.

---

[3] Officer Beluso's first name does not appear in the report of proceedings.

¶ 13    Chicago police detective Devin Jones testified that on September 21, 2009, he and his partner Detective Arthur Davis arrived at the scene of the shooting. Jones observed 10 shell casings on the street and blood spatter both outside of Barron's apartment building and inside the apartment. Jones then went to the hospital, but could not interview Barron or Alphonso because they were in surgery. On October 1, 2009, Jones learned that defendant had been arrested in connection with the incident. Jones conducted a lineup with Alphonso on October 1, 2009, and Pettigrew on October 8, 2009. Both identified defendant.

¶ 14    Chicago police detective Sylvia Van Witzenburg testified that on September 22, 2009, Pettigrew arrived at the police station, told her what she witnessed during the incident, and provided three license plate numbers. Van Witzenburg determined that defendant owned one of the vehicles. She then created a photo array with defendant's picture in it and showed the array to Pettigrew, who identified defendant as one of the shooters. Van Witzenburg prepared another photo array that did not contain defendant's picture, and Pettigrew did not identify anyone in that array. Later, Van Witzenberg interviewed Alphonso in the hospital and showed him two photo arrays, one including defendant's photo, and one not. Alphonso identified defendant in the first array, and did not identify anyone in the second.

¶ 15    The parties entered into a stipulation that if called, Dan Richardson, an evidence technician for the Chicago Police Department, would testify that he photographed and collected evidence from the scene, including the 10 cartridge cases. The State also offered in evidence a certified record from the Secretary of State demonstrating that one of the license plate numbers provided by Pettigrew matched a vehicle registered to defendant.

¶ 16    Marc Pomerance, a forensic scientist for the Illinois State Police, testified that he received 10 cartridge cases from the scene of the incident. Pomerance determined that two separate firearms discharged the cartridge cases, five from one firearm, and the remaining five from another.

¶ 17    After closing arguments, the jury found defendant guilty of aggravated battery with a firearm and attempt murder with respect to both Alphonso and Barron, and further found that defendant possessed and personally discharged a firearm in the commission of each attempt murder.

¶ 18    Defendant subsequently filed a *pro se* motion claiming ineffective assistance of counsel, arguing in relevant part that counsel denied him an opportunity to accept a plea offer.

¶ 19    On January 12, 2012, the trial court conducted a preliminary inquiry on defendant's posttrial ineffective assistance of counsel claim pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984). Regarding the plea issue, the court asked the State if it offered defendant a plea, to which the prosecutor replied, "Judge, it does appear that the State never tendered an offer, although I was not the assistant [S]tate's [A]ttorney that handled this case from the inception," and continued that "based on our records *** the defendant was never tendered an offer." The prosecutor further relayed that after defendant demanded trial and pretrial litigation began, "during those motions, again, I don't believe we ever tendered an offer or had any discussions with [c]ounsel regarding an offer to the [d]efense."

¶ 20    The court asked defense counsel if his "records indicate whether or not there was ever a discussion of any type of a plea offer?" Counsel responded, "No, not with the State." The court then stated to defendant, "I can't say how your attorney could be ineffective by not conveying a plea offer *** when there was not an offer extended by the State to your attorney, sir." Defendant

replied, "Okay." The court dismissed defendant's posttrial ineffective assistance claim without appointing new counsel.

¶ 21 On July 16, 2012, the court denied defendant's motion for a new trial. The court then merged the aggravated battery counts into the attempt murder counts (720 ILCS 5/8-4 (West 2008); 720 ILCS 5/9-1 (West 2008)) and sentenced defendant to two consecutive 30-year prison terms, each comprising 10 years for attempt murder with a 20-year firearm enhancement. On July 20, 2012, the court denied defendant's motion to reconsider sentence.

¶ 22 On direct appeal, defendant claimed that (1) the evidence was insufficient because the eyewitness testimony was unreliable, (2) the trial court erred by including the firearm enhancements in defendant's sentences, (3) the trial court abused its discretion by imposing the same sentence on defendant as Anderson because Anderson's criminal record was more extensive, and (4) defendant was entitled to two additional days of presentence credit, for a total of 1021 days. This court corrected defendant's mittimus to reflect the two additional days of credit, but otherwise affirmed. *Owens*, 2014 IL App (1st) 122327-U.

¶ 23 On June 7, 2016, defendant filed a *pro se* postconviction petition, claiming in relevant part that, "Early in this case the two assistant [S]tate's [A]ttorneys, Jennifer Bagby and Eugene Wood, had made a plea offer of twenty-five years at 85% for the offense of attempt first degree murder." Defendant claimed trial counsel informed him of the offer, but "advised" him to proceed to trial. Defendant told counsel he wanted to accept the deal, but counsel "strongly recommended" trial instead. Later, when new assistant State's Attorneys entered the matter, defendant asked counsel to inquire about a plea offer, but counsel was "reticent on the issue." Defendant claimed counsel

failed to inform him of the consequences of his decision regarding the plea offer. Defendant did not attach any supporting documentation relevant to the plea bargaining claim.

¶ 24    On November 7, 2016, the circuit court docketed the petition for second stage review and ordered that the public defender be notified. On November 30, 2016, postconviction counsel entered her appearance on behalf of defendant.

¶ 25    On June 26, 2017, postconviction counsel relayed to the court that she received and reviewed the record and "sent [her] investigator out to talk to some people that were mentioned, as well as [defendant]." On September 21, 2017, postconviction counsel stated that she reviewed the "court file," but had not yet received her office's "trial file." During proceedings on October 5, 2017, postconviction counsel referred to defendant's filing as a petition under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2016)). She also represented that she received and reviewed the trial file, and would not supplement defendant's petition. On both October 12 and 30, 2017, counsel again described defendant's petition as a 2-1401 petition.

¶ 26    In November 2017, counsel filed a certification under Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) that she consulted with defendant "to ascertain his contentions of deprivations of constitutional rights," "obtained and examined transcripts of his case including his jury trial and sentencing," and that she did not file an amended petition because the *pro se* petition "for Habeas relief adequately sets forth the petitioner's claim of deprivation of his constitutional rights."

¶ 27    On April 2, 2018, the State filed a motion to dismiss defendant's petition. Respecting defendant's claim of ineffective assistance as to the alleged plea offer, the State argued, "Nowhere in the petition does [defendant] claim that counsel forced him to go to trial or that he was coerced

or forced to reject the State's offer." The State characterized defendant's argument as "conclusory," and contended that he made the "personal decision to reject the plea and go to trial."

¶ 28    On April 23, 2018, the court heard argument on the State's motion to dismiss. Respecting defendant's claim for ineffective assistance at plea bargaining, the State argued that defendant made "the conclusory statement that he was coerced to reject the plea offer. He provides no other information besides that conclusion." Postconviction counsel's only argument during the hearing was that after reviewing the record, her file, and speaking to defendant's trial counsel, she filed "a 521C," and believed that defendant's "petition could stand alone" as articulating "all of his deprivation of his constitutional rights."

¶ 29    On August 13, 2018, during an appearance for status on the petition, counsel stated to the court regarding defendant's sentence, "I believe he got forty years."

¶ 30    On September 20, 2018, the court granted the State's motion to dismiss. Regarding defendant's claim of ineffective assistance at plea bargaining, the court stated the allegation was "conclusory and unsupported." The court noted that defendant did not attach affidavits, records, or supporting documents that would render the allegation capable of objective or independent corroboration, and while the failure to attach an affidavit from his trial counsel could be excused, defendant could not "be excused for failure to establish the State actually offered the plea in the terms he alleged." The court continued that defendant's postconviction counsel could have conducted discovery to obtain "corroborating documents," and that the court could "reasonably presume that post-conviction counsel made a concerted effort to obtain affidavits in support" of defendant's claim, but was unsuccessful.

¶ 31     On appeal, defendant claims that his postconviction counsel provided unreasonable assistance by failing to properly investigate his claim for ineffective assistance of trial counsel.

¶ 32     The Act provides a mechanism for a criminal defendant to challenge his conviction "by alleging it was the result of a substantial denial of federal or state constitutional rights or both." *People v. Lesley*, 2018 IL 122100, ¶ 31. Petitions under the Act are considered in three stages. *Id.* Where the circuit court has docketed the petition for second stage review, "the court may appoint counsel to represent an indigent defendant, and counsel may amend the petition if necessary," and the "State may then file a motion to dismiss the petition." *Id.* ¶ 32. The court will then determine if the defendant's petition made a substantial showing of a constitutional violation; if so, the petition is advanced to the third stage for an evidentiary hearing, but if not, the circuit court may dismiss the petition. *People v. Dupree*, 2018 IL 122307, ¶ 28.

¶ 33     Defendant claims here that his appointed postconviction counsel provided unreasonable assistance at the second stage of proceedings. There is no constitutional right to counsel during postconviction proceedings, and the right to counsel is a statutory creation under the Act, which requires only that counsel provide reasonable assistance. *People v. Johnson*, 2018 IL 122227, ¶ 16. Postconviction counsel's filing of a certificate pursuant to Rule 651(c) gives rise to a rebuttable presumption that counsel's representation was reasonable. *People v. Custer*, 2019 IL 123339, ¶ 32. The Rule 651(c) certificate should include representations that counsel consulted with the defendant to ascertain the constitutional claims, examined the record of proceedings at trial, and amended the petition as necessary to adequately present the claims. *People v. Cotto*, 2016 IL 119006, ¶ 27. To rebut the presumption of reasonable assistance, a defendant must affirmatively demonstrate from the record that counsel failed to "substantially comply with the duties mandated

by Rule 651(c)." *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19. Where counsel filed a Rule 651(c) certificate but a defendant claims that counsel's conduct was unreasonable, the defendant must show not only how the attorney's performance was deficient or unreasonable, but also what prejudice resulted from that deficiency. *People v. Landa*, 2020 IL App (1st) 170851, ¶ 58.

¶ 34 The record here does not mention any plea offer from the State prior to trial. Following trial, defendant filed a *pro se* motion alleging ineffective assistance of counsel in part for denying him the chance to accept a plea offer, without providing specifics about the offer. The trial court denied defendant's posttrial ineffective assistance claim following a preliminary *Krankel* inquiry, during which the assistant State's Attorney represented on the record that no offer had ever been made to defendant, and defense counsel confirmed he never received an offer from the State. The court denied defendant's claim, concluding in relevant part that defense counsel could not be ineffective for not relaying an offer the State never made. Defendant did not make any additional statements during the preliminary *Krankel* inquiry to support the claim.

¶ 35 Defendant's *pro se* postconviction petition reiterated the claim of ineffective assistance of counsel, this time including the names of two assistant State's Attorneys who allegedly made the offer and the purported terms of the offer. Defendant did not attach any supporting documentation relevant to the plea bargaining claim. After the circuit court docketed defendant's postconviction petition for second stage consideration, the court appointed counsel, and the State moved to dismiss the petition. Postconviction counsel filed a Rule 651(c) certificate without amending the petition, representing across various court dates that she conducted an investigation and reviewed the trial record and her office's trial file. The circuit court granted the State's motion to dismiss, finding in relevant part that defendant's allegations regarding the alleged plea offer were

conclusory and unsupported, and that defendant had not established that the State actually made the offer defendant alleged.

¶ 36    We find that defendant has not rebutted the presumption, created by the Rule 651(c) certificate, that his postconviction counsel provided reasonable assistance. The record on appeal shows that at the preliminary *Krankel* inquiry, the State affirmatively represented to the trial court that the State had never offered defendant a plea, and defense counsel affirmed this. Postconviction counsel represented to the circuit court that she had read the trial file, and filed a Rule 651(c) certificate to the same effect. By virtue of a Rule 651(c) certificate, a circuit court may presume that postconviction counsel investigated the defendant's claims and pursued relevant evidence for them. See *People v. Jones*, 2011 IL App (1st) 092529, ¶ 23 (citing *People v. Rossi*, 387 Ill. App. 3d 1054, 1060 (2009)); see also *People v. Woods*, 2020 IL App (1st) 162751, ¶ 103 ("based on counsel's Rule 651(c) certificate and comments in court, we must presume that counsel attempted to investigate defendant's witnesses and substantiate her claims but that his investigation ultimately bore no fruit"). It follows that, based on the above representations by postconviction counsel, we may presume that postconviction counsel reviewed the relevant reports of proceedings, read the portions affirmatively demonstrating that the State never made a plea offer, and reasonably concluded therefrom that the claim warranted no further action. Defendant has made no showing to rebut any of these presumptions.

¶ 37    Defendant argues that Rule 651(c) requires counsel to demonstrate that she contacted the assistant State's Attorneys he named in his petition, but this argument misstates the law because postconviction counsel is not required to advance claims that the record suggests are meritless. See *People v. Greer*, 212 Ill. 2d 192, 205 (2004) (although postconviction counsel must amend

petitions where appropriate, "Rule 651(c) does not require postconviction counsel to advance frivolous or spurious claims on defendant's behalf"). Postconviction counsel here could reasonably conclude that the representations at the preliminary *Krankel* inquiry rendered the ineffective assistance at plea bargaining claim meritless. Additionally, as discussed above, the Rule 651(c) certificate gives rise to the presumption that postconviction counsel sufficiently investigated defendant's claims, and defendant does not offer any evidence to rebut this presumption.

¶ 38     Defendant further argues that the State, by arguing in its motion to dismiss that defendant chose to reject a plea offer, conceded that it made a pretrial plea offer. But again, the report of proceedings for the preliminary *Krankel* inquiry affirmatively rebuts the contention that the State made a pretrial plea offer, and there is no substantive evidence from either the trial record, defendant's petition, or the State's motion indicating otherwise.

¶ 39     Finally, defendant argues that his postconviction counsel's mistakes and misstatements during the litigation positively rebut the presumption that she reasonably investigated defendant's claims. While counsel sometimes misstated that the petition was a 2-1401 motion or *habeas corpus* petition, that her certification was "521C," and that defendant's sentence was 40 years' imprisonment, her statements do not positively demonstrate that she failed to read the trial record, particularly in light of the fact that counsel made specific representations to the court that she read the record verbally and in writing. Given this understanding, postconviction counsel's misstatements are ancillary because her review of the record would have revealed that both the State and defendant's trial counsel stated on record that the State made no plea offer, and the trial court found that, accordingly, trial counsel could not have been ineffective for not relaying an offer the State never made.

¶ 40    Because defendant failed to rebut the presumption created by the Rule 651(c) certificate that postconviction counsel provided reasonable assistance, his claim fails, and based on the foregoing analysis, we affirm the circuit court's second stage dismissal of defendant's postconviction petition.

¶ 41    Affirmed.