2021 IL App (1st) 182207-U

No. 1-18-2207

Order filed September 17, 2021

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 04 CR 21061 |
| | ) | |
| CARL STURDIVANT, | ) | Honorable |
| | ) | Lauren Gottainer Edidin, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE SHARON ODEN JOHNSON delivered the judgment of the court.
Presiding Justice Daniel J. Pierce and Justice Mary L. Mikva concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court's dismissal of defendant's postconviction petition at the second stage is affirmed where he did not make a substantial showing of private postconviction counsel's alleged unreasonable assistance.

¶ 2    Defendant Carl Sturdivant appeals from the dismissal of his petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2014)) at the second stage of proceedings, arguing that private postconviction counsel provided unreasonable assistance by raising an unmeritorious claim. We affirm.

¶ 3      Defendant was charged by indictment with robbery (720 ILCS 5/18-1(a) (West 2004)) following an incident on July 28, 2004. The matter proceeded to a jury trial in 2006, where the court permitted evidence of defendant's other crimes. This court detailed the evidence in its order on direct appeal, and accordingly, only those facts necessary to resolve this matter are relayed below.

¶ 4      At trial, Cathie Moorhous testified that on July 28, 2004, at 3:30 p.m., she went to a Walgreens store in Evanston. Before entering the store, she saw a man "lurking on the sidewalk" between her parked vehicle and the store's entrance. Moorhous purchased some items, then exited the store and walked towards her vehicle. She saw the same man 10 to 15 feet from the store's entrance, standing by a payphone with the receiver in his hand. As she approached, the man dropped the receiver, punched Moorhous twice in the face and pushed her against a wall, then took her purse and fled. A man selling newspapers nearby came to her aid. She told a Walgreens employee to call 911, and police officers arrived shortly thereafter. Due to the incident, she suffered a dislocated jaw and a scraped shoulder. She identified defendant in court as the offender.

¶ 5      Later that day, and again on August 2, 2004, Moorhous viewed photographs at the Evanston police station, but did not identify anyone as her attacker. On August 5, 2004, Evanston police detective Gene Mulligan showed her additional photographs. She was "unsure" if the photographs depicted her attacker. Mulligan then showed her a single photograph. Moorhous recognized the subject as her attacker, which caused her heart to beat faster and a chill to go through her. She told Mulligan that the man "looked very much" like the offender, and "resemble[d] my attacker to a large degree." She returned to the police station the next day, August 6, 2004, and identified defendant in a physical lineup.

¶ 6    On cross-examination, Moorhous testified that on the day of the incident, defendant wore a "loose white shirt," a "white scarf" on his head, and "darker pants." She described him as "medium built, light to medium skin, black person, late teens in age." The single photo wherein she identified defendant on August 6, 2004, was not part of the six-photo array she also viewed that day.

¶ 7    Gerald Farmer testified that he sold newspapers outside the Walgreens on July 28, 2004, and saw defendant, whom he identified in court. Farmer had never seen him before. Defendant paced near two payphones outside the entrance and asked whether Farmer was "going to call the police." Farmer said no but moved to another location near the Walgreens and continued to sell newspapers. At approximately 3:35 p.m., he heard a woman scream, looked towards the sound, and saw defendant struggling with the woman. Defendant fled with what looked like a purse. Farmer and another woman flagged a police vehicle.

¶ 8    On July 28, 2004, Farmer went to the police station and viewed photographs, but did not identify anyone. On August 5, 2004, he returned to the station and viewed a photo array wherein he identified defendant. Farmer also identified defendant in a physical lineup on August 6, 2004. On cross-examination, Farmer testified that defendant wore a white t-shirt and "light tannish brown *** pajama pants" during the incident.

¶ 9    Evanston police sergeant Angela Hearts-Glass testified that she responded to the Walgreens, received a description of the perpetrator, and asked people in the area whether they knew someone matching the description. Based on her investigation, she went to a house on the 1400 block of Simpson to look for defendant. The house was "less than 500 feet" from the Walgreens. Alfrieda Myricks answered the door and permitted Hearts-Glass entry. She went

upstairs and located defendant in a bedroom behind a dresser. Myricks also directed Hearts-Glass to the kitchen drawer containing grocery store cards, some with Moorhous's name on them.

¶ 10    Evanston police officer Ervin Deleon testified that Mulligan directed him to a location on the 1400 block of Simpson Street in Evanston to collect evidence on August 5, 2004. From a drawer in the kitchen, Deleon recovered "store cards and credit cards" that belonged to Moorhous. He also recovered cards belonging to another individual, Brigid Brechling. On cross-examination, Deleon testified that he did not find items bearing defendant's name in the drawer.

¶ 11    Evanston police officer Melvin Collier testified that he responded to the Walgreens, met with Moorhous, photographed her injuries, and recovered latent fingerprints from a payphone.

¶ 12    The State entered a stipulation that Evanston police officer Nicole Mimms-Johnson would testify that she fingerprinted defendant at the police station on August 5, 2004.

¶ 13    Mary Beth Thomas, a forensic scientist for the Illinois State Police, testified that she received finger and palm prints from defendant and the latent fingerprints from a payphone, and determined that defendant's prints matched a latent fingerprint from the phone.

¶ 14    Evanston police detective Joe Dugan testified that he responded to the Walgreens on July 28, 2004, where he met with Moorhous and Farmer, and later brought them to the police station to review "mugshot photo books." Moorhous returned on August 2, 2004, to review additional photographs, and again on August 6, when she identified defendant in a lineup. Farmer also identified defendant in a physical lineup that day. Also on August 6, 2004, Dugan Mirandized defendant, who agreed to speak and admitted to robbing Moorhous and Brechling.

¶ 15    Brechling testified that on July 26, 2004, a man stole her wallet outside of the Walgreens. She did not identify anyone in a lineup on August 6, 2004, but testified that she could not rule out

that defendant was the culprit. The court instructed the jury that Brechling's testimony was only relevant regarding "defendant's intent and modus operandi."

¶ 16    Defendant testified that he had pled guilty in three previous cases, including criminal sexual assault in 1997, delivery of a look-alike controlled substance to a person under 18 in 2000, and possession of a controlled substance in 2003. On August 5, 2004, he lived at the house on Simpson with Myricks, his girlfriend at the time. When the police arrived, he hid because, due to a prior conviction, he could not "stay in Evanston." The officers took him to the police station, where he told detectives he found the cards near a garbage can three to four days earlier. He denied robbing anyone or admitting to the officers that he had done so but asserted that he was threatened with a hate crime charge and promised leniency if he cooperated.

¶ 17    In rebuttal, the State called Mulligan, who testified that he and Dugan interviewed defendant on August 6, 2004, and no one threatened defendant or promised him anything in connection with his admissions to the robberies. Defendant never said he found cards near a garbage can.

¶ 18    Former Assistant State's Attorney Steven Block testified that on August 6, 2004, he was with Dugan and Mulligan when defendant admitted to the robberies. Defendant refused to sign a written statement. No one threatened defendant or made promises in exchange for his statement, and he never said he found the cards near the garbage.

¶ 19    The jury found defendant guilty of robbery. At a later proceeding, the court denied defendant's motion for a new trial, and the matter moved to sentencing. The State established that defendant was subject to Class X sentencing, and the court imposed 20 years' imprisonment. Defendant did not file a motion to reconsider sentence.

¶ 20    On direct appeal, defendant claimed that (1) the trial court erred in allowing evidence of prior crimes, or, alternatively, not instructing the jury as to the definition of *modus operandi*, and (2) trial counsel was ineffective for not moving to suppress Moorhous's identification. This court affirmed. *People v. Sturdivant*, No. 1-06-2078 (2009) (unpublished order under Illinois Supreme Court Rule 23). Regarding the latter claim, we ruled that the identification was reliable because even accepting that the single-photo procedure was suggestive, Moorhous still had a "heightened level of certainty" after viewing the single photograph and an independent recollection beyond the photograph. *Id.* at 21. Moreover, even if Moorhous's identification were suppressed, the result of the trial would not have changed because the remaining evidence established defendant's guilt beyond a reasonable doubt. *Id.* at 23.

¶ 21    Defendant, through private counsel, filed a postconviction petition on December 23, 2015. The petition alleged "actual innocence," such that its claims were not barred despite being filed beyond the statute of limitations. Specifically, the petition alleged that trial counsel was ineffective for not moving to suppress Moorhous's identification. The petition acknowledged that the claim had been raised and denied on direct appeal, but claimed it was not barred by *res judicata* because relevant facts were outside the record, namely, police reports indicating that Moorhous said she was unsure whether defendant's photograph was in the photo array, or that the single photograph depicted defendant. The petition also claimed that counsel was ineffective by failing "to impeach, and failure to present exonerative evidence."

¶ 22    Private counsel attached an internal document from the Evanston Police Department entitled "investigative supplemental report" to the petition. Therein, Mulligan wrote that on August 5, 2004, Moorhous was "unsure" whether the initial six-photo array contained defendant's

photograph. Mulligan then showed her a single, larger photograph, and Moorhous stated the man depicted looked "very similar" to her attacker, but she was "not 100% sure" it was him.

¶ 23 On March 15, 2016, the circuit court advanced the petition to the second stage. The State moved to dismiss, arguing that the petition was filed beyond the statute of limitations and did not raise a legitimate actual innocence claim because the evidence was not newly discovered or sufficiently conclusive. Defendant filed a response on June 15, 2017.

¶ 24 On March 30, 2018, postconviction counsel admitted he lacked the appellate court record when he filed the petition, but had since received it, and was now withdrawing all claims except for the failure to file a motion to suppress identification. Counsel further stated that although the appellate court, on direct appeal, ruled on a claim for ineffective assistance of counsel for not moving to suppress Moorhous's identification, the claim was not barred by *res judicata* because the appellate court did not "have the facts."

¶ 25 During argument on July 13, 2018, the State argued that defendant filed the petition after the statute of limitations expired and did not raise legitimate claims of actual innocence. Moreover, defendant already raised the lone remaining claim in the petition on direct appeal, meaning it was improper for inclusion in a postconviction petition. Defense counsel responded that the petition raised a valid actual innocence claim.

¶ 26 On September 14, 2018, the circuit court heard additional argument regarding the motion to dismiss, then granted the State's motion, noting on the criminal disposition sheet that "there is no claim of actual innocence, [and] therefore the case is barred by timeliness."

¶ 27  On appeal, defendant argues private postconviction counsel provided unreasonable assistance by raising an unmeritorious claim for ineffective assistance of trial counsel for not moving to suppress Moorhous's identification.

¶ 28  The Act provides a mechanism for a criminal defendant to challenge his conviction on the basis that it violates the federal or state constitution, or both. *People v. Lesley*, 2018 IL 122100, ¶ 31. Petitions brought under the Act proceed in three stages. *Id.* At the second stage, the State may move to dismiss the defendant's petition, and the circuit court should only advance the petition to a third-stage evidentiary hearing if the defendant can make a "substantial showing" of a constitutional violation. *People v. Domagala*, 2013 IL 113688, ¶ 35. A substantial showing "is a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, which if proven at an evidentiary hearing, would entitle petitioner to relief." (Emphasis omitted.) *Id.* We review the circuit court's dismissal of a postconviction petition at the second stage *de novo*. *People v. Dupree*, 2018 IL 122307, ¶ 29.

¶ 29  Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) provides that upon appointment to represent an indigent client on postconviction appeal, counsel should certify that he consulted with the defendant to ascertain his claims of constitutional deprivation, reviewed the record of proceedings at trial, and amended any *pro se* petitions as necessary to adequately state the defendant's claims. Ill. S. Ct. R. 651(c) (eff. July 1, 2017). Where a defendant has hired counsel at the second stage of postconviction review, the rules pertaining to Rule 651(c) certificates do not apply, but the defendant is still entitled to reasonable assistance. *People v. Cotto*, 2016 IL 119006, ¶¶ 30-32, 41. This standard is analyzed similarly to claims arising under *Strickland v. Washington*, 466 U.S. 668 (1984). See *People v. Zareski*, 2017 IL App (1st) 150836, ¶ 59. Thus, to establish a

claim of unreasonable assistance of private postconviction counsel, a defendant must establish both that counsel's conduct was objectively unreasonable, and that the defendant suffered prejudice, *i.e.*, that the result would have been different absent the deficient conduct. *Id.* ¶¶ 59-61. The defendant must demonstrate both prongs, and if he cannot establish prejudice, the claim fails. *Id.* ¶ 61; see also *People v. Eddmonds*, 143 Ill. 2d 501, 511-12 (1991).

¶ 30    Here, the record shows that the only claim that postconviction counsel raised at the second stage of review was ineffective assistance of trial counsel for not moving to suppress Moorhous's identification. The State moved to dismiss, arguing the claim was time-barred and barred by *res judicata*. Postconviction counsel argued that the claim qualified as an actual innocence claim because it was based on material not in the record at time of trial. The circuit court granted the State's motion to dismiss, and on this appeal, defendant's lone argument is that postconviction counsel was unreasonable for raising the claim because it was facially invalid.

¶ 31    On this record, we find that defendant's argument fails because he has not demonstrated prejudice from the alleged deficient conduct of postconviction counsel. Defendant's postconviction petition only contained one claim, which he now argues should never have been raised. But he proffers no viable claim that could have survived the second stage of review. Therefore, had postconviction counsel decided not to raise the claim of which defendant now complains, the circuit court would have still dismissed his petition. Thus, we are hard pressed to find that defendant was prejudiced from postconviction counsel's conduct.

¶ 32    For the foregoing reasons, the circuit court's dismissal of defendant's postconviction petition is affirmed.

¶ 33    Affirmed.