2023 IL App (1st) 191311-U

SECOND DIVISION
September 12, 2023

No. 1-19-1311

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Respondent-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | 08 CR 3655 |
| | ) | |
| ANTONIO BLANCHARD, | ) | Honorable |
| | ) | Earl B. Hoffenberg, |
| Petitioner-Appellant. | ) | Judge Presiding |

_____

JUSTICE ELLIS delivered the judgment of the court.
Presiding Justices Fitzgerald Smith and Howse concurred in the judgment.

**ORDER**

¶ 1    *Held*: Affirmed. Trial court properly ensured that postconviction petitioner knowingly and voluntarily waived right to counsel. Postconviction counsel's actions prior to termination of representation did not prejudice petitioner.

¶ 2    Petitioner Antonio Blanchard has not been a fan of his appointed attorneys over the years. After he was convicted of armed robbery with a firearm, he complained that his trial counsel had been ineffective. The circuit court was not convinced, and this court affirmed his conviction and 40-year sentence, finding nothing wrong with his representation.

¶ 3    Blanchard then filed a postconviction petition. It moved to the second stage of proceedings, and new counsel was appointed. The petition bounced between the circuit and appellate courts; the last time he was here, we reversed the dismissal of his petition and

remanded for more second-stage proceedings because it was not clear that postconviction counsel had examined a key trial exhibit to see if it might lead to any new claims. *People v. Blanchard*, 2015 IL App (1st) 132281.

¶ 4    Things didn't go so well on remand, at least in petitioner's opinion. After the exhibit— the victim's credit card, which was allegedly found in the petitioner's pocket after the victim was robbed—was tested for DNA, petitioner complained that postconviction counsel wasn't doing her job. Tempers escalated, until eventually the trial court agreed to discharge counsel and allow petitioner to proceed *pro se*, at his request. It did not end the way he wanted; although petitioner put together a voluminous amended petition with exhibits, the trial court dismissed it at the second stage.

¶ 5    On appeal, petitioner renews his complaints against his postconviction attorney. First, petitioner argues that his waiver of postconviction counsel was the result of incomplete and insufficient admonishments by the trial court and was thus invalid. Second, he argues that postconviction counsel prejudiced the proceedings when she attacked his desire to hire a different DNA expert, and the trial court failed to cure this prejudice by appointing private counsel to represent petitioner.

¶ 6    Neither argument has merit. Petitioner made a well-informed and voluntary decision to represent himself, and he must live with that choice. Nothing appointed counsel did prejudiced the outcome of the proceedings. We affirm the trial court's judgment.

¶ 7                              BACKGROUND

¶ 8    This case originates with the robbery at gunpoint of Michael Malachowski. At petitioner's bench trial, Malachowski testified that on February 7, 2008, at about 6:30 in the morning, petitioner approached him, pulled out a gun, and demanded his wallet. Malachowski

handed it over and ran from the scene, then called the police. Chicago police officer Hector Agosto arrived shortly thereafter and arrested petitioner based on a description Malachowski gave the authorities. Agosto testified that he searched petitioner and found a credit card in his pants. The card belonged to the victim. Later that afternoon, Malachowski identified petitioner in a lineup. A picture of the lineup, a photo of petitioner, and the card Agosto recovered were offered as exhibits at defendant's trial.

¶ 9 Petitioner testified that he was walking along the street on the way to a friend's house when a squad car approached him. Two men, yelling profanities and threatening to "blow [his] brains" out, approached him from the car, and he took off running. He slipped on some ice and fell, and one officer handcuffed him while the other searched his pockets. He denied committing the robbery or ever possessing the credit card.

¶ 10 The trial court found the State's witnesses more credible than petitioner and convicted him of armed robbery with a firearm. Petitioner later complained his trial counsel had been ineffective, and the court held a hearing to determine if his claims had any merit, pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984). The court concluded they did not and refused to appoint new counsel, then later sentenced him to a total of 40 years in prison. We affirmed his conviction on direct appeal. See *People v. Blanchard*, No. 1-09-0753 (2010) (unpublished order under Supreme Court Rule 23).

¶ 11 In December 2011, petitioner filed a *pro se* postconviction petition, alleging that trial counsel was ineffective in various ways, that a detective perjured himself at trial, and that the State used false evidence to convict him. The trial court docketed the petition and appointed the Office of the Cook County Public Defender to represent him in second-stage proceedings. Attorney Ingrid Gill was assigned the case. Gill later sent petitioner a letter saying she would not

be amending his petition. In that letter, Gill also told petitioner that the recovered credit card had been returned to the victim, and it could not be tested for DNA since it had been in his possession for the last four years. Shortly after, counsel filed a certificate under Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) indicating that she had examined the petition and its claims and the record in the case, and that she had spoken to petitioner about his petition.

¶ 12 But counsel did eventually file a supplemental petition, adding a claim that the firearm sentencing enhancement (which added 15 years to petitioner's sentence) violated the Illinois Constitution's proportionate penalties clause. Gill then filed another Rule 651(c) certificate, again affirming that she had consulted with petitioner via phone and letter, obtained the transcripts and common law record in his case, and investigated his claims.

¶ 13 Apparently unhappy with Gill's efforts, petitioner filed a *pro se* motion for leave to amend his postconviction petition. In this amended filing, petitioner claimed there were problems with the chain of custody of the credit card and alleged the card had not been returned to Malachowski but was a trial exhibit. On the State's motion, the court dismissed the petition.

¶ 14 On appeal, petitioner argued that Gill had provided unreasonable assistance, as Rule 651(c) requires, because she did not examine the trial exhibits. *Blanchard*, 2015 IL App (1st) 132281, ¶ 14. This court concluded that it was unclear if counsel had examined the exhibits— which appellate counsel had found—and remanded the case for further second-stage proceedings, with orders that postconviction counsel look at the credit card. *Id.*, ¶ 19.

¶ 15 Back again in the circuit court, Gill asked for and received the original trial exhibits. In them was an envelope with the credit card Agosto recovered from petitioner's pocket. On September 20, 2016, Gill filed a motion requesting the card be tested for DNA. See 725 ILCS 5/116-3 (West 2016). The State joined in the motion, and the card and a buccal swab taken from

petitioner was sent to the Illinois State Police crime laboratory for analysis.

¶ 16    On November 3, 2017, and while everyone was waiting for the DNA results to come back from ISP, petitioner filed a *pro se* motion "requesting to be allowed to proceed *pro se*." In that motion, petitioner alleged that Gill had violated the rules of professional conduct and that he "did not want anyone from the public defender's office of Cook County appointed to represent me in the proceedings." Petitioner asked the court to appoint both an independent DNA expert and a private attorney as stand-by counsel.

¶ 17    On the next court date, November 17, 2017, petitioner, Gill, and the State all appeared before the judge. By then, the results and raw data from the DNA test had been sent to the court, and both Gill and the State received copies. Petitioner said he wanted to address his motion "in regards to having the public defender that's currently representing me removed." Petitioner then filed what appears to be another copy of his earlier motion, asking the court to appoint an independent DNA expert and private standby counsel.

¶ 18    The parties extensively discussed the DNA evidence and next steps. The court asked Gill, still petitioner's counsel at the time, to confer with petitioner. Petitioner told the court that "She don't have to—if she just tenders me the paperwork, I can go from there." Gill explained that some of the evidence was on a disc and required special software; it was not a matter of simply printing off the file and giving it to petitioner.

¶ 19    Gill then discussed what she intended to do with the DNA evidence, assuming she stayed on as counsel. She wanted to consider hiring an expert to perform a probabilistic genotyping, but she would not spend the money if petitioner dismissed her as counsel. After more discussion and plenty of cross-dialogue, petitioner again complained about his case, saying, "I was against ISP doing the testing anyway. Now, I understand the State's budget; and I understand Ms. Gill's

point of view … I have been in contact with an independent forensic expert that gave his opinion and [would] be willing to defer payment." That expert later turned out to be Karl Reich, a scientist with Independent Forensics.

¶ 20    After the court expressed concern about paying for the expert, petitioner asked, "What if I foot the bill to bring him in, if I should go *pro se*?" The court responded that "You could always do that."

¶ 21    The court then asked Gill to respond to her client's *pro se* motion, and she said she would. Petitioner objected, claiming he was "ready to go now." But the court set another court date, insisting that the parties take some time to contemplate their next moves.

¶ 22    Gill filled a formal response to her client's motion in which she stated that petitioner's "disagreement with appointed counsel's strategy lacks an arguable basis in law and fact to warrant the removal of the Public Defender." She further noted that the expert, Reich, had "never discussed with appointed counsel this case, her legal strategy, or her knowledge of the science behind DNA testing." She claimed that Reich's opinion on counsel's strategy was based on a "misunderstanding of the facts and the science" and "amount[ed] to the unauthorized practice of law[.]"

¶ 23    Further on, Gill focused on what she believed was the crux of petitioner's complaints: specifically that petitioner did not "want the Public Defender to pursue Probabilistic Genotyping software analysis on the DNA results generated by the Illinois State Police" and that Gill had "failed to provide reasonable legal services in her representation[.]" It appears from the record that Gill believed that Reich had made comments to petitioner that questioned her competency, to which Gill took offense. Gill forcefully claimed that she had provided reasonable legal services to petitioner, and that Reich's opinion "lacks an arguable basis in law and fact since he

has never spoken to appointed counsel, or examined the DNA report, the DNA analyst's case file, and the raw electronic data generated. As a DNA expert, his opinion amounts to a *de facto* unauthorized practice of law regarding an attorney's strategy or tactics in a post-conviction DNA testing proceeding." Gill asked the court to deny petitioner's motion to dismiss her for cause because a "disagreement" on strategy was an insufficient ground for the removal of the public defender for cause.

¶ 24    At the next court hearing, on January 12, 2018, the parties all appeared to argue petitioner's motion. Petitioner renewed, nearly immediately, his request that, "to be honest with you [judge], I don't even want nobody from the public defender's office to represent me … I asked to go *pro se*[.]" The court decided to set another court date to review the numerous and voluminous filings in the case and asked petitioner if there was anything else he wanted to file to his "petition to allow you to go *pro se*[.]" Petitioner again reiterated that he wanted to go "*pro se*" and did not "want the Public Defender's office."

¶ 25    The issue came to a head on March 23, 2018, when the court held a hearing on petitioner's motion. The court began by framing the question, seeking to clarify what petitioner was asking. We quote extensive passages from this exchange because they will become important later:

> "THE COURT: But, you see, it still presents a conflict, and what I'm saying to you is this—
>
> THE DEFENDANT: Yes, I would like to represent myself.
>
> THE COURT: Well, if you would like to represent yourself, then any issue with—regarding [Ms. Gill] is moot because, as a matter of course, if you want to represent yourself, that's your choice totally. You have a right to have a public—you don't want to.

By suggesting to the court that you want to represent yourself, that takes any issue I have to rule on with regard to Ms. Gill. Do you understand what I'm saying to you?

THE DEFENDANT: Uh-huh.

THE COURT: So that was my first question. And I don't want to get into any issue because—you wrote all these things about Ms. Gill and why—this and that, and she wrote a response. And then I was looking through the thing, and I was thinking, Well, you know what, you have a right to represent yourself statutorily and you have a right to a [public defender]. But if you don't want her to represent you, that is your choice. So that's why I'm asking you first. Because should you decide you'd rather represent yourself, I don't have to make any decisions regarding whether or not you'd even be entitled to outside counsel, whether you don't—All these other things are not at issue should you determine you want to represent yourself. That's why I ask you.

So if you want to represent yourself, the only thing I have to make sure is that you understand that you're making a decision that is free of—you know, of your own choice. I mean, that's—as long as I understand you, that's what you want to do. You know you have a right to do that."

¶ 26   Petitioner interrupted the court and again began to list his grievances with Gill's representation. The court let him vent for a while, then cut him off and said:

THE COURT: Listen. I'm not—We're not at that stage of the proceedings yet. Okay? I know where you're coming from, but I have to explain to you this. Again, I can't make any determination that's way down the road sometimes in terms of what you think you can or cannot establish at a hearing or whatever. That's up to you. That's fine.

But what I'm saying to you is that, as long as I feel that you knowingly and intelligently

relinquish the right to counsel—I want to start over again so you understand where I'm coming from.

THE DEFENDANT: I completely understand everything you're saying, Judge. Yes, I want to go *pro se*.

THE COURT: Okay. So the record will reflect that I find the defendant knowingly and intelligently has waived the right to the public defender and has indicated he wants to represent himself."

¶ 27    After a few more exchanges, the court revisited the issue with petitioner. The court told him:

"THE COURT: Now, you understand I'm determining—because of what you said to the Court—that you really are relinquishing your right to—I think that you're doing it freely and voluntarily. That, I do believe.

THE DEFENDANT: Exactly. Yes.

THE COURT: But you understand that, in doing so, when you represent yourself, you'll still—I still have to follow the law in terms of what I believe.

THE DEFENDANT: I understand that, your Honor.

THE COURT: Okay. All right. So defendant is allowed to represent himself. The [public defender] is withdrawn."

¶ 28    At the hearing, petitioner did not ask the court to appoint a new public defender or private counsel.

¶ 29    From that point on, petitioner represented himself. A few months later, in June 2018, petitioner appeared in court for a status update in his case. At one point, he asked to "clean up" some things regarding his numerous filings in the case. Petitioner brought up his earlier motion

seeking the appointment of a bar attorney. The court responded:

"I'll tell you now, I have looked over the case law, and more importantly, it is not in your favor regarding that. You're not entitled to—you're entitled to a [public defender]. You're not entitled to a private lawyer. I have looked over the law and I did have the law, but if it ever becomes an issue, you can ask us for that and do what you feel."

¶ 30    The court denied petitioner's motion for outside counsel, and he did not object or otherwise revisit the issue. Later in the hearing, when petitioner was trying to figure out how he might present evidence to support his petition, the court told him that "I can't treat you differently than any other person that would be a lawyer. You would be treated the same because you're representing yourself, and I went through the admonishments." The defendant told the judge he understood what he was saying and again did not ask for a new attorney or to have the public defender reappointed to his case.

¶ 31    Eventually, petitioner filed an amended postconviction petition. In it, he argued that the lineup police showed the victim, in which the victim identified petitioner as the man who robbed him, was unduly suggestive. Petitioner also indicated he would call Reich to the stand as a DNA expert if there was a third-stage evidentiary hearing. The State moved to dismiss the petition, claiming that the allegations were conclusory and lacked merit.

¶ 32    After more court hearings and interactions with the court, petitioner filed a motion best understood as a response to the State's motion to dismiss and an amended postconviction petition. The amended petition and accompanying exhibits were more than a hundred pages long. In this filing, petitioner raised several allegations of trial counsel's ineffectiveness, discovery violations by the State, and Ms. Gill's performance as postconviction counsel.

¶ 33    Although petitioner again said he might call Reich to testify and included Reich's report

in his numerous filings, he did not include any claim of actual innocence based on the DNA testing by Reich. Reich's report found two significant process issues with the ISP testing, and Reich opined that, at "the very least, the laboratory cannot claim to identify [petitioner] and he is more likely than not to be excluded as a contributor" to the DNA on the credit card.

¶ 34    The State filed a response, and petitioner replied. At a hearing on the petition, the court agreed with the State that petitioner did not raise any substantive argument based on Reich's report and conclusions. The court rejected the balance of petitioner's claims and dismissed the petition. Petitioner now appeals.

¶ 35                                    ANALYSIS

¶ 36    On appeal, the petitioner first argues that his waiver of counsel was not made knowingly or intentionally because the trial court failed to adequately admonish him about the gravity of his decision to proceed *pro se*. Second, petitioner believes postconviction counsel's disagreements with him prejudiced him at the second-stage proceedings.

¶ 37    We start with his waiver of postconviction counsel. When a defendant is accused but not yet convicted, the Sixth Amendment robustly protects his right to counsel or, if he chooses, to represent himself. *People v. Haynes*, 174 Ill. 2d 204, 235 (1996). The importance of the right to counsel is the reason for Illinois Supreme Court Rule 401 (eff. July 1, 1984), designed to ensure that, before the accused makes the monumental decision to forgo counsel, he or she is fully aware of the consequences and makes a knowing and intelligent decision. *People v. Reese*, 2017 IL 120011, ¶ 62. Rule 401 requires a trial court to inform the defendant and ensure that he understands: (1) the nature of the charges against him; (2) the minimum and maximum sentences he faces, including any possible sentencing enhancements; and (3) that he has the right to counsel and, if indigent, to have counsel appointed to represent him. Ill. S. Ct. R. 401(a) (eff.

July 1, 1984). A court must be mindful to substantially cover these bases; insufficient admonishments may mean a defendant did not knowingly or intelligently waive this core constitutional right. See, *e.g.*, *People v. Stewart*, 2023 IL App (1st) 210912, ¶ 45.

¶ 38    But things are different when the defendant is convicted and collaterally attacks his conviction through postconviction proceedings. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). When the accused "defendant" becomes the convicted "petitioner," he no longer is veiled with the presumption of innocence and the panoply of rights woven into it, such as the constitutional right to counsel. *People v. Custer*, 2019 IL 123339, ¶ 30. Instead, the right to postconviction representation is a "legislative grace" bestowed through the Post-Conviction Hearing Act. *Id.*; see 725 ILCS 5/122-4 (West 2020).

¶ 39    In general, the principles that apply to postconviction counsel are more relaxed than their trial counterparts. *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006). In essence, the nature of the right being protected—that of competent counsel—is more limited after the defendant is found guilty and levies a collateral attack on his conviction. And at this stage of the case, after a full trial and conviction, we can safely assume a petitioner is more familiar with his case and the nature of the proceedings as opposed to someone walking into court for the first time. See *Young*, 341 Ill. App. 3d at 387; *Harrison*, 2018 IL App (3d) 150419, ¶ 18.

¶ 40    Even so, counsel is important at the second stage of proceedings. The Act works best when a competent attorney collects the petitioner's often underdeveloped and scattershot claims, shapes them into a presentable manner, and presents them to the court so they can be properly examined. *People v. Lesley*, 2018 IL 122100, ¶ 33. That is why, at the second and third stages of proceedings, defendants are "afforded the advantages of representation." *Id.*

¶ 41    Like the constitutional right, however, a petitioner may waive or give up the statutory

right to postconviction counsel. See 725 ILCS 5/122-4 (West 2022). And like its constitutional counterpart, that right can only be surrendered when the defendant knowingly and intelligently relinquishes it in a clear and unequivocal waiver. *Lesley*, 2018 IL 122100, ¶ 34. But because of the nature of the proceeding and the status of the petitioner, the admonishments need not reach the same level of detail to which a charged defendant is entitled. *People v. Young*, 341 Ill. App. 3d 379, 387 (2003) (court is not required to give Rule 401 admonishments to postconviction petitioners). Indeed, a convicted petitioner already knows the substance of Rule 401's admonishments; he already knows the offenses for which he was convicted, and he knows more than the possible sentence he might receive—he knows the actual one he did receive. See *id.*

¶ 42    In postconviction proceedings, a petitioner can relinquish his right to counsel in three ways: waiver, forfeiture, and waiver by conduct. *Lesley*, 2018 IL 122100, ¶ 36. Waiver is an intentional relinquishment of a known right. *Id.* A petitioner may forfeit the statutory right to counsel if he fails to make a timely assertion of the right. *Id.* ¶ 37. And finally, a petitioner may waive the right through his conduct if he engages in dilatory tactics or otherwise thwarts his counsel's efforts to represent him. *Id.*, ¶ 38. In this situation, the defendant's actions demonstrate an implied request for self-representation, and the court may, at a certain point, put his feet to the fire and discharge his postconviction counsel. *See id.* ¶ 38. Waiver can be implied from the circumstances of each case, and whether a waiver is valid depends upon those circumstances. *Id.* Thus, we must examine each case individually to determine if the defendant knowingly and intelligently waived, forfeited, or waived by conduct his right to postconviction counsel. *Id.*

¶ 43    We will not disturb the trial court's decision to allow a defendant to proceed *pro se* absent an abuse of discretion. *People v. Baez*, 241 Ill. 2d 44, 116 (2011). A court abuses its discretion only if no reasonable person would take the view adopted by the trial court. *People v.*

*Hall*, 195 Ill. 2d 1, 20 (2000).

¶ 44     Here, petitioner repeatedly sought to waive his right to appointed postconviction counsel

and, through his conduct, demonstrated that he wanted to follow through on that waiver. See

*People v. Rouse*, 2020 IL App (1st) 170491, ¶ 57. In other words, his actions resemble both

waiver and waiver by conduct. *See Lesley*, 2018 IL 122100, ¶¶ 36, 38. And while there is no

script for a court to follow before allowing a postconviction petitioner to discharge his counsel,

the court here adequately warned petitioner of the dangers of self-representation.

¶ 45     Importantly, petitioner requested numerous times—in writing and person—to represent

himself. *Young*, 341 Ill. App. 3d at 386-87. And even when he still had counsel, he continued to

send the court *pro se* motions and other filings, even prompting his counsel to object and file her

own response addressing some of his complaints against her. Petitioner clearly indicated he

would not work with appointed counsel and wanted to go his own way.

¶ 46     Once it became clear that petitioner was unhappy and no longer wanted Gill to represent

him, the extent of the court's duty was to inform him of the consequences of his actions and the

risks he would be taking. This is admittedly a bit of a grey area—while the Supreme Court has

laid out what a circuit court must tell a charged defendant before allowing him to represent

himself at trial, there is no similar playbook for postconviction proceedings. *See Lesley*, 2018 IL

122100, ¶ 61 ("Although we decline to impose specific requirements on circuit courts faced with

difficult defendants in postconviction proceedings, we instruct them to warn defendants of the

consequences of their repeated refusals to work with appointed counsel and the difficulties of

self-representation before requiring them to proceed *pro se*.").

¶ 47     In other words, the bare minimum the circuit court had to do was warn the defendant that

he had the right to counsel but could represent himself, and that there might be consequences if

he did. Although the admonishments here were a bit disjointed, the court ultimately got the message across. *See also People v. Harrison*, 2018 IL App (3d) 150419, ¶ 17. Critically, the trial court warned petitioner that he had the right to have a public defender represent him, but not a right to outside counsel, and that even if petitioner represented himself, the court would "still have to follow the law in terms of what I believe." In other words—you can go it alone, but the rules don't change. Each time the court addressed this topic, petitioner was stringent in his desire to go *pro se*.

¶ 48    Later in the case, the court continued to admonish petitioner about the pitfalls of self-representation. On a separate court date, the court again reminded petitioner that he was entitled to a public defender, though not private counsel, and that he would be held to the same standards as an attorney. Given an opportunity to rethink his decision, petitioner forged ahead on his own.

¶ 49    At the end of the day, petitioner clearly wanted to represent himself. The court made several inquiries into whether he understood and appreciated the gravity of that decision, and petitioner said he understood and accepted those risks. He never vacillated on his desire to represent himself and filed numerous documents after dismissing his attorney that illustrated he understood the process. *See People v. Bakaturski*, 2023 IL App (4th) 220300, ¶ 25.

¶ 50    We thus find the admonishments sufficient, and we find that petitioner's waiver of counsel was knowing and intelligent. The court did not abuse its discretion in allowing petitioner to proceed *pro se*.

¶ 51    Petitioner next argues that the actions of his once-attorney, Gill, prejudiced him during second-stage proceedings. He believes the trial court should have appointed outside counsel when it became clear that Gill and petitioner would not work with each other, as permitted (in his view) by state law. See 725 ILCS 5/113-3 (West 2020). Section 113-3, he notes, permits a

defendant to request counsel other than the public defender if the court "finds that the rights of the defendant will be prejudiced by the appointment of the public defender." *Id.*

¶ 52    There are two initial problems with this argument. First, it is not clear that section 113-3 applies to postconviction proceedings, as it is located in Title 5 of the Code of Criminal Procedure of 1963, which applies to "Proceedings Prior to Trial[.]" 725 ILCS 5/5 *et seq.* (West 2020). We are well past the trial at this stage, which is why the right to postconviction counsel comes from a separate place, the Post-Conviction Hearing Act itself, at section 122-4. See 725 ILCS 5/122-4 (West 2020). Section 122-4 of the Act does not reference or incorporate section 113-3 in any way, nor does it include a similar clause allowing the court to appoint a different attorney if it believes having the public defender will prejudice the petitioner.

¶ 53    Second, when things with Gill fell apart, petitioner did not ask for another attorney to be appointed as lead counsel or invoke section 113-3 to do it—he insisted he wanted to represent himself but asked for standby counsel. He never argued the specific point he does now in the trial court and has thus forfeited it. See *Pendleton*, 223 Ill. 2d at 475 (claim not raised in either *pro se* or amended petition cannot be argued for first time on appeal).

¶ 54    Even setting all this aside, the record does not reflect the prejudice petitioner claims. After Gill was discharged, petitioner was given free rein to do what he desired, and he took advantage of it to get what he wanted most: a report from the DNA expert that Gill had dismissed. And once Gill left the stage, she never appeared in the case again. There is no evidence—and the defendant has not pointed to any—that suggests her actions influenced the outcome of the proceedings once she was discharged from the case.

¶ 55    Still, petitioner insists that, because Gill refused to hire and cooperate with petitioner's preferred DNA expert, Karl Reich, the court should have appointed private counsel to assist

petitioner so he could properly incorporate Reich's findings into an amended petition. But he again ignores the fact that he wanted to represent himself. True, when he asked to go *pro se*, he did request the court appoint standby counsel, which the court declined. But we have been cited no decision, nor are we aware of one, where a trial court's decision not to appoint standby counsel was reversed by a reviewing court. See *Hood*, 2022 IL App (4th) 200260, ¶ 95 ("*no* trial court in Illinois has been reversed for exercising its discretion to *not* appoint standby counsel" (emphasis in original, internal quotation marks omitted)); *People v. Ellison*, 2013 IL App (1st) 101261, ¶ 42 (same).

¶ 56     Thus, any claim that Gill's actions prejudiced petitioner is irrelevant, because petitioner represented himself and had ample opportunity to use Reich's analysis in his petition to support a claim. True, perhaps owing to his limited legal skills, he never developed a viable claim to use the analysis, even if one might have existed (such as an actual-innocence claim). But that is nothing less than the result of his decision to proceed *pro se*, as he insisted on doing.

¶ 57     Petitioner wanted to use Reich; Gill, as a matter of trial strategy, did not. So petitioner asked the court to dismiss Gill, and it did. He then was free to use Reich's report however he saw fit—or, perhaps, misuse it. But he must live with the consequences of that decision, and he has not demonstrated how Gill's actions prejudiced him. We reject this claim.

¶ 58                                   CONCLUSION

¶ 59     The judgment of the circuit court is affirmed.

¶ 60     Affirmed.