2024 IL App (1st) 190675-U

Nos. 1-19-0675 and 1-20-1153 (cons.)

Order filed March 29, 2024

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| | ) | Nos. 12 CR 17019 |
| v. | ) | 12 CR 17020 |
| | ) | 12 CR 17021 |
| | ) | |
| MARK URRUTIA, | ) | Honorable |
| | ) | Thaddeus L. Wilson, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE TAILOR delivered the judgment of the court.
Justices Hyman and C.A. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*: Circuit court did not err in accepting defendant's decision to represent himself in second-stage postconviction proceedings, as it properly determined that his decision to proceed *pro se* was made voluntarily and knowingly.

¶ 2    Following a 2014 bench trial in three consolidated cases, defendant Mark Urrutia was convicted of violating an order of protection in each case and sentenced to consecutive prison terms totaling 14 years. In these consolidated appeals, Urrutia appealed from circuit court orders

dismissing his petition filed pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)) (appeal No. 1-19-0675) and striking his petition for relief from judgment filed pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2020)) (appeal No. 1-20-1153). In his brief, however, Urrutia only contends that the court erred in dismissing his postconviction petition where it allowed him to represent himself in the postconviction proceedings without properly admonishing him or determining that his decision to represent himself was made voluntarily and knowingly. We affirm the judgments of the circuit court.

¶ 3     Urrutia was charged with offenses against Adrianela (or Adriane) Valentin, who had obtained an order of protection against him in case 09 CR 22357, in which Urrutia pled guilty to violating an earlier order of protection. In case 12 CR 17019, Urrutia was charged with two counts of violating the order of protection in case 09 CR 22357 on August 18, 2012. In case 12 CR 17020, he was charged with two counts of violating that order of protection on June 2, 2012. In case 12 CR 17021, he was charged with aggravated stalking, stalking, and two counts of violating the order of protection for incidents between June 2 and August 20, 2012. The three cases were consolidated in 2013.

¶ 4     The State filed a pretrial motion to admit other-crimes evidence of multiple offenses by Urrutia against Valentin from 2000 to 2009 to show, in part, his propensity to commit domestic violence. Urrutia responded to the motion, arguing that Valentin "has used the criminal justice system to exert power and control over" him by "calling the police whenever [he] disagreed with her or she didn't get her way." The court granted the State's motion in part, admitting seven convictions based on pleas of guilt by Urrutia.

¶ 5 At the 2014 trial, Valentin testified that she and Urrutia dated from 1995 to 2000. He struck her in the face in 2002; trespassed in her basement twice in 2003; attacked Rueben Cabrera, her boyfriend at the time, with a flashlight during the second 2003 incident; and phoned Valentin at work in 2008 and 2009. Cabrera also testified to the second 2003 incident when he saw Urrutia in Valentin's home in the night and Urrutia struck him on the head with a flashlight. Urrutia pled guilty to violating an order of protection after each incident, and to domestic battery in the 2002 incident and home invasion in the latter 2003 incident. Valentin received another order of protection against Urrutia in March 2010 in case 09 CR 22357. The order of protection, which is in the record on appeal, was in effect in 2012.

¶ 6 Valentin testified that, on June 2, 2012, she was leaving Los Comales restaurant near the shop she owned when Urrutia quickly parked his car behind hers. He told her he did not kick down the door of her home (possibly referring to the 2003 trespasses), did not want any trouble, and had just told her mother he still loved Valentin. She reminded him of the order of protection, and he said, "you can't change me."

¶ 7 Valentin and her employee Jose Mannie Verduzco testified that, on August 18, 2012, they were getting into her car in front of her shop at night when Urrutia approached in his car very slowly. Valentin said she saw Urrutia make eye contact with her as he drove past, and his face was "spiteful." Verduzco said he saw Urrutia stare at Valentin with an "upset" expression.

¶ 8 Hector Pedroza, Valentin and Urrutia's lifelong acquaintance, testified that, on August 20, 2012, he came to Valentin's home to tell her Urrutia called him three times, asking him to tell Valentin that Urrutia "didn't want no problems, no trouble" and wanted to know what she was going to do.

¶ 9     Valentin admitted that, during Urrutia's imprisonment, she wrote him letters, visited him regularly, and accepted over 500 calls from him, as she feared his retaliation upon release from prison. She acknowledged not pursuing charges against Urrutia on a few occasions.

¶ 10    For the defense, Rosemarie Sierra testified that Urrutia, the father of her son, would come to her home near Los Comales restaurant to visit their son.

¶ 11    Urrutia testified that Valentin contacted him despite the orders of protection against him. While imprisoned on his guilty plea conviction for home invasion, he received letters, calls, and visits from Valentin. On June 2, 2012, Urrutia parked by Los Comales restaurant on his way to see his son. As he was looking for his wallet, he heard Valentin say, "I knew I'd see you tonight." He replied, "I don't want no trouble," and left. On August 18, 2012, Urrutia was driving to his son's home. He denied going to the area with the intent to see Valentin, or that he knew her shop was nearby. He testified that his first reaction when he saw Valentin both times was to "get *** away from her."

¶ 12    The court found Urrutia guilty of two counts of violation of an order of protection (720 ILCS 5/12-3.4(a) (West 2010)) in each of the three cases.  However, it found insufficient evidence of stalking.

¶ 13    At sentencing in May 2014, Urrutia addressed the court, saying he did nothing wrong, and the cases were about Valentin's bitterness and desire for control. The court merged the counts in each case into one count per case and expressly found consecutive sentencing necessary to protect the public. The court sentenced Urrutia to consecutive extended prison terms of six years in case 12 CR 17021 and four years each in cases 12 CR 17019 and 12 CR 17020.

¶ 14    On direct appeal, Urrutia challenged his consecutive sentencing and we affirmed, finding the record supported consecutive sentencing and trial counsel was not ineffective for failing to preserve the sentencing claim. *People v. Urrutia*, 2016 IL App (1st) 141609-U, ¶¶ 35-38, 42-44 (unpublished order under Supreme Court Rule 23).

¶ 15    In 2015, Urrutia filed a *pro se* petition for relief from a void judgment (735 ILCS 5/2-1401(f) (West 2014)) claiming he was not apprised of the possibility of consecutive sentencing. The circuit court denied the petition in March 2015, and Urrutia did not appeal.

¶ 16    In 2016, Urrutia filed another *pro se* petition for relief from a void judgment. 735 ILCS 5/2-1401(f) (West 2014). He claimed that: (1) Valentin lied and was impeached at trial, (2) a police report would show Valentin was harassing him but the report was never tendered or brought into evidence, (3) he was not admonished of the possibility of consecutive sentences, and (4) trial counsel provided ineffective assistance by not investigating Valentin's harassment of Urrutia or obtaining the police report. The court denied the petition in November 2016. On appeal, we dismissed for lack of jurisdiction and granted appellate counsel's motion to withdraw. *People v Urrutia*, No. 1-17-1174 (2019) (unpublished summary order under Supreme Court Rule 23(c)).

¶ 17    In February 2017, Urrutia filed the *pro se* postconviction petition now at issue. He claimed (1) insufficiency of the trial evidence, (2) the order of protection was unconstitutional, (3) trial counsel was ineffective, (4) appellate counsel was ineffective, (5) his arrest was illegally based on an investigative alert, (6) excessive sentence, (7) judicial prejudice, (8) prosecutorial misconduct, and (9) undue prejudice from other-crimes evidence.

¶ 18    Postconviction counsel was appointed in June 2017. In June 2018, she certified pursuant to Supreme Court Rule 651(c) (eff. July 1, 2017) that she consulted with Urrutia by telephone to

ascertain his claims, examined the record, reviewed Urrutia's petition, and concluded that no amendments were necessary to adequately present his claims.

¶ 19 The State filed a motion to dismiss Urrutia's postconviction petition.

¶ 20 In November 2018, a different assistant public defender (APD) appeared for Urrutia in lieu of the APD who signed the Rule 651(c) certificate. In December 2018, postconviction counsel told the court, "I won't be making any argument as to the *pro se* petition. [My former colleague] filed a 651(c) without filing a supplemental petition. The State filed a motion to dismiss. I've read that and the petition and talked to Mr. Urrutia on the phone, which is why I took a date to speak to him on the phone and review some of the records before I spoke to him and I will just be resting on the 651(c) today." After postconviction counsel made clear that he would not be responding to the State's motion to dismiss, Urrutia told the court there "was a critical police report that I think might change the outlook of the way you viewed me" and "I would like to answer [the State's] dismissal [motion], if given the chance." The court asked Urrutia, "So you're telling me you wish to represent yourself?" and he replied, "If you're giving me the chance to do that, sir."

¶ 21 After some discussion of the police report, the court asked a second time, "So the question here is do you wish to represent yourself going forward?" Urrutia answered "I come this far by myself, sir. If you give me the chance, I would like to respond to [the State's] motion because I think I'm going to point out certain issues where they twisted testimony to fit their theory." The court told defendant, "You'll be responsible for your own filing. We will not be going back to the Public Defender," and Urrutia said "Yeah, I filed that." The court also told Urrutia, "once you represent yourself, that's it. I'm not going [to] delay this matter."

¶ 22    After a discussion of Urrutia obtaining the police report in discovery, the court admonished Urrutia a third time, "Once I allow you to represent yourself, you will need to finish this on your own. I will not appoint the Public Defender back again to represent you. So is that what you're telling me you wish to do?" Urrutia replied "Well, sir, he's not going to argue anything on my behalf, so what's the difference?"

¶ 23    The court then allowed the Public Defender to withdraw and noted that Urrutia was proceeding *pro se*.

¶ 24    Urrutia filed a discovery request for the police report and a response to the State's motion to dismiss. In February 2019, the court heard Urrutia's discovery motion. The State told the court that efforts to find the police report Urrutia was seeking were unsuccessful, and the court denied the discovery motion. On March 13, 2019, the court granted the State's motion to dismiss. In a written order the court noted that Urrutia's petition set forth "nine major claims," noting that of its "57 different claims," many were "repetitive," "*ad hominem* remarks about the victim," or "rhetorical statements." The court disposed of Urrutia's claims *seriatim*. Appeal 1-19-0675 timely followed.

¶ 25    In February 2020, Urrutia filed the *pro se* section 2-1401 petition for relief from judgment also being appealed, claiming that his arrest was improperly based on an investigative alert.[1] On August 27, 2020, the court struck Urrutia's petition for relief from judgment "without prejudice," finding that it lacked jurisdiction because of pending appeal 1-19-0675. Appeal 1-20-1153 followed. On Urrutia's motion, we consolidated the appeals.

---

[1] While the record does not include a copy of the petition, a motion by Urrutia and the court's order referred to the February 2020 *pro se* filing of a petition for relief from judgment, and the latter also recited the petition's claim.

¶ 26 We note that, although defendant's notice of appeal in No. 1-20-1153 is directed to the dismissal of his 2020 section 2-1401 petition for relief from judgment, he raises no contention of error regarding that dismissal. "Points not argued [in an appellate brief] are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Therefore, we affirm the dismissal of Urrutia's section 2-1401 petition in No. 1-20-1153.

¶ 27 The sole issue Urrutia argues on appeal is that the court erred in dismissing his postconviction petition because it allowed him to represent himself in second-stage proceedings without properly admonishing him or determining that his decision to represent himself was voluntary.

¶ 28 The Act provides for the appointment of counsel if a postconviction petition survives the first stage of proceedings by not being summarily dismissed and proceeds to the second stage where it may be dismissed on the State's motion. 725 ILCS 5/122-2.1, 122-4, 122-5 (West 2016). There is no constitutional right to counsel during postconviction proceedings, and the right to counsel in proceedings under the Act that survive the first stage is a matter of legislative grace. *People v. Lesley*, 2018 IL 122100, ¶ 35.

¶ 29 A postconviction petitioner may waive or give up the statutory right to postconviction counsel. See 725 ILCS 5/122-4 (West 2022). "Commensurate with Illinois's statutory right to appointed counsel in postconviction proceedings is a defendant's ability to waive that right, so long as the defendant's waiver is voluntary, knowing, and intelligent." *People v. Lesley*, 2018 IL 122100, ¶ 50. A knowing and intelligent choice requires "full awareness of the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* ¶ 25. If the court

determines that a defendant has unambiguously, knowingly, and intelligently waived his or her right to postconviction counsel, after considering the particular facts and circumstances including the defendant's background, experience, and conduct, the court must accept the defendant's request to proceed *pro se*. *People v. Bakaturski*, 2023 IL App (4th) 220300, ¶ 18.

¶ 30 We will not disturb the trial court's decision to allow a defendant to proceed *pro se* absent an abuse of discretion. *People v. Baez*, 241 Ill. 2d 44, 116 (2011). A court abuses its discretion only if no reasonable person would take the view adopted by the trial court. *People v. Hall*, 195 Ill. 2d 1, 20 (2000).

¶ 31 Here, the court clearly asked Urrutia if he was choosing to represent himself three times at the hearing in December 2018. While he never expressly said "yes," Urrutia did not demur or object but gave responses entirely consistent with wanting to represent himself, such as, "If you're giving me the chance to do that, sir," and "I come this far by myself, sir. If you give me the chance, I would like to respond to their motion." In other words, "[d]efendant did not vacillate." See *Bakaturski*, 2023 IL App (4th) 220300, ¶ 25. Rather, he unambiguously seized the opportunity to represent himself.

¶ 32 As to whether Urrutia's waiver was made knowingly and intelligently, the court not only asked if Urrutia wanted to represent himself but repeatedly informed him of the consequences, including that he would "be responsible for [his] own filing," the court was "not going [to] delay this matter," and he would "need to finish this on your own. I will not appoint the Public Defender back again to represent you." In addition, the court clearly explained the consequences of self-representation to Urrutia. Urrurtia indicated that he understood.

¶ 33    In the postconviction context, there is no magic language that a circuit court must use before allowing a defendant to represent himself. See *Lesley*, 2018 IL 122100, ¶ 61 ("Although we decline to impose specific requirements on circuit courts faced with difficult defendants in postconviction proceedings, we instruct them to warn defendants of the consequences of their repeated refusals to work with appointed counsel and the difficulties of self-representation before requiring them to proceed *pro se*."). The court merely must warn the defendant that he has the right to counsel but could represent himself, although there may be consequences if he does. *People v. Blanchard*, 2023 IL App (1st) 191311-U, ¶ 47.

¶ 34    We find no abuse of discretion in the court's acceptance of Urrutia's decision to represent himself in the postconviction proceedings after counsel was appointed for him. The court adequately warned Urrutia that he had the right to have a public defender represent him, that he would be responsible for his court filings and adhering to court deadlines, and that he would be required to represent himself for the duration of the case. Following his waiver of counsel, Urrutia filed legal documents and made legal arguments which demonstrated his understanding of the process. See *Bakatruski*, 2023 IL App (4th) 220300, ¶ 25 (the defendant knowingly and voluntarily waived his right to postconviction counsel when he did not vacillate on his request for self-representation, and filed numerous documents and made legal arguments following his waiver of counsel illustrating his understanding of the process).

¶ 35    Accordingly, we affirm the judgment of the circuit court.

¶ 36    Affirmed.